No. 10,286.

SUCCESSION AND COMMUNITY OF G. DUHÉ — OPPOSITION OF JOHN P. MOLL.

<table>
<tr><td>41</td><td>209</td></tr>
<tr><td>46</td><td>473</td></tr>
<tr><td>41</td><td>209</td></tr>
<tr><td>49</td><td>158</td></tr>
<tr><td>41</td><td>209</td></tr>
<tr><td>114</td><td>483</td></tr>
</table>

1. Debts which are privileged on all movables in general must be paid in the order named in R. C. C. 3191; and those which are privileged on movables and immovables must be paid in the order specified in R. C. C. 3252.

2. As there is no mention made of supplies of provision, etc. in the latter, it is to be presumed that the Legislature intended that they should not bear on immovables.

3. A succession representative is not entitled to discount a note payable at a future date, so as to reduce it to cash; the proper way is to compute the interest due at the date of filing the account and add that to the capital.

4. A mortgage creditor of the father's succession is not bound by the terms and recitals of a judgment homologating his tutor's account while living. As to him they are *res inter alios acta*, and their contents must be proved in some proceeding to which he is a party to bind him.

5. Ten per cent stipulated in an act of special mortgage as attorneys' fees in case judicial proceedings are necessarily resorted to, is in the nature of damages, and is covered by the mortgage and the mortgagee is entitled to collect same as well as the capital and interest of his debt, all being of equal rank and dignity.

APPEAL from the Twenty-sixth District Court, Parish of St. John the Baptist.

Rost, J.

_____

*Jules Reine* and *P. E. Edrington* for Plaintiffs and Appellants.

*L. DePoorter* for Defendant and Appellee.

_____

The opinion of the Court was delivered by.

WATKINS, J.  Guillaume Duhé was first married to Stéphanie Delanneville, who died on the 3d of November, 1876, leaving two minor children, Guillaume and Cecile, surviving issue of their union.  He was subsequently married to Lydia Bontiton, who is still living.  This second marriage occurred only one year after the death of his first wife, but no administration of her succession was begun until the 17th of February, 1883, when Duhé caused himself to be appointed and confirmed natural tutor for their two children, caused an inventory of the property of the first community to be taken, and an abstract of same to be recorded in the book of mortgages.  On the 1st of May, 1883, Duhé caused his deceased wife's share in the property of the community to be adjudicated to him at its appraised value in the inventory, but omitting therefrom the item of merchandise, which was valued at $2000.  On the 16th of May, 1883, he borrowed from the opponent $1000, for which he gave his promissory note and consented a special mortgage on said property as security, and same was duly recorded.  In December, 1884, Duhé filed an account of the affairs of the tutorship, in which he declared himself indebted to his two minors, in the sum of $2818, that being one-half of the appraisement in the in the inventory, less the cost of the proceedings in adjudication.  This account was homologated in chambers on the 9th of January, 1885.

On the 21st of April, 1885, Duhé died intestate and insolvent, and his

surviving spouse, Lydia Boutiton, qualified as administratrix of his succession, and Mrs. Genevieve Madere was qualified and confirmed dative tutrix to said minors.

In September, 1885, the administratrix caused all the property of the succession to be sold—movable and immovable—to pay debts, and, on the 2nd of December, 1885, filed a final account of the affairs of his succession and the community, distributing therein the proceeds of sale.

It is to this account that opposition is made by Moll, as a mortgage creditor, and in which he demands a restatement of the account; various items of which he specially opposes. From a judgment sustaining this opposition, the administratrix has appealed, and the tutrix also.

## I.

It appears from the record that there were realized from the sale of the movable $548 35, and from the immovables $3230, but she only charged herself with $3148 32 as the proceeds of the latter. This amount is arrived at in the following manner, viz:

The *proces verbal* shows $3230, but of this only one-third was for cash, and the remainder was on a credit of six years with interest, and, in order to file a final account, the amount of the note, $2153 33⅓, was discounted at date of filing the final account, and was reduced to the sum of $2070 65⅔. This amount added to the proceeds of the personal property produces the sum of $3695 67, with which she charges herself. On the credit side of the account she classes as " debts privileged on the movables," five different items, for baking and furnishing bread, and for meat and supplies of provision furnished within six months of the death of the deceased; for the maintenance of the minors during the administration; and to the surviving spouse in community, for "bed, bedding and furniture exempt and not subject to be sold to pay debts," all aggregating $326 60.

These five items are opposed, on the ground, substantially, that they are improperly placed in the *first* rank as entitled to be paid in preference to funeral charges, law charges, and the expenses of last illness. He also opposes them as bearing no lien and privilege on the proceeds of the real estate to the prejudice of his special mortgage.

The Code declares that " the debts which are privileged on all the *movables* in general, are those hereinafter enumerated, and are paid in the following order:

"1. Funeral charges.

"2. Law charges.

"3. Charges of whatever nature, occasioned by the last sickness, etc.'

"4.   The wages of servants for the year past, etc.

"5.   Supplies of provisions to the debtor, or his family, during the last six months, by retail dealers, such as bakers, butchers and grocers, etc." R. C. C. 3191.

It is evident that neither of those five items are properly placed in the *first* rank. The first four should be postponed to the fifth rank.

Proceeding then to re-adjust the next twelve items of this account, so as to comport with the terms of the article cited, the same must be paid in the following order, viz:

1.   *Funeral charges :*
  (a.)   E. Badoil, for burial.......................$15 00
  (b.)   F. Rodiesque, opening tomb............... 8 00
  (c.)   A. Millet, for coffin........................ 15 00—$ 38 00
2.   *Law charges :*
  (a.)   C. Millet, clerk of court.................. 77 20
         Less amount due by minors............... 28 60
                                                          ─────
         Balance..............................$48 60
  (b.)   John Webre, sheriff....................... 50 00
  (c.)   Chas. Lasseique, official paper............. 50 00
  (d.)   Lydia Huhé, administratrix commission.... 60 85
  (e.)   Future cost...................  ............ 20 00—$229 45
3.   *Expenses of last illness :*
  (a.)   Dr. Huard, medical attention.............. 15 00—  15 00
                                                          ─────
         Total amount.................................$282 35
Deducting this amount from proceeds of movables.............$548 35
                                                          ─────
         And there remains....................................$265 90

Counsel for the opponent concedes that the attorney for the administratrix and tutrix is entitled to this sum for his fees, and it is not denied that such fees are entitled to rank as law charges, and as such entitled to be paid in second rank.

The proceeds of movables being thus absorbed, nothing remains for application to the four items first mentioned, and which belong to the fifth rank in the order of payment; and nothing remains applicable to items numbered 5, 16 and 17 on account, the same being for the surviving spouse and for the services and attention of a midwife and physician in procuring the birth of a posthemous child. Hence, all of these demands, in so far as they relate to the distribution of the proceeds of the sale of the movables, may be dispensed from further consideration.

## II.

But the administratrix has classed the last twelve items as "debts privileged on *movables and immovables ;*" and as the first five are placed in the first rank, as entitled to be paid in preference to all others, it may be fairly assumed that a like privilege is claimed for them in the alternative; hence this proposition comes next in the order of discussion.

The Code declares that the " privileges which extend alike to *movables and immovables*, are the following:

"1.  Funeral charges.

"2.  Judicial charges.

"3.  Expenses of last illness,

"4.  The wages of servants.

"5.  The salaries of secretaries, etc." R. C. C. 3252.

There is no mention made of " supplies and provisions " as in R. C. C. 3191, *cited supra*. That this was clearly intended by the Legislature in adopting the Code, will appear from the perusal of the comparative provisions found in R. C. C. 3253, 3166, 3260. Hence, all the items under present consideration, except the remainder of attorney's fees in excess of $265 90, are *not* entitled to participate in the proceeds of the sale of immovables.

But, if this were not so, items 5, 16 and 17 are not entitled to participate therein because they do not come within the provisions of R. C. C. 3101, or 3252.

Taking into consideration the amount of the inventory, the length of time during which the succession has been under administration, and the work which the attorney for the administratrix has performed, we are disinclined to reduce the amount of $350 claimed and allowed, as attorney's fees. Deducting therefrom the amount already disbursed to him out of the proceeds of the sale of movables, $265 90, and there is remaining due on that score, $84 10 to be withdrawn from the proceeds of the sale of immovables.

## III.

The accountant charges herself with $3147 32, and claims, as due the minors, the sum of $2070 65⅔, with vendor's lien and mortgage, as well as legal mortgage, thus absorbing the whole of the six-year note, above mentioned as discounted; and the residue of $2818 (as allowed them on tutor's account) is allowed with legal mortgage, of first rank, and to be prior in preference to opponent's special mortgage.

Hence, on this theory, we could have the following statement of accounts, viz:

To amount of proceeds of real estate........................$3,147 32

    Cr.

By amount paid balance of attorneys' fees.......$   84 10
By balance due minors........................   747 34½
By amount awarded minors....................$2,070 65⅔—$2,902 10

    Balance down........................................$  245 22

This, of course, is not the same statement as is furnished in the account, because we have, in the preceding paragraphs, eliminated several items going to make up the latter; but, it is the same, with those items included.

The theory of the accountant is that the amount of the debt due the minors is $2818, as shown by the tutor's homologated account, and which consists of the following items, viz:

1. One-half of the price of adjudication of the community
    real estate ...........................................$1,750 00
2. One-half the price of adjudication of the movables, ditto...  290 00
3. One-half of the value of a stock of merchandise on hand at
    their mother's death................................. 1,000 00

    Total amount........................................$3,040 00

    Cr.

By one-half total debts................................... 222 00

    Balance due minors...................................$2,818 00

The opponent denies the correctness of this statement, in several particulars, viz:

1. That there was any such stock of merchandise on hand in 1876, at the death of Stéphanie Delannoville, G. Duhé's first wife; and, if there was, there is, in the record, no sufficient proof of its existence.

2. He contends that the administratrix is chargeable with the full amount of the proceeds of the sale of the real estate, $3230 instead of $3147 32; and insists that the proper way in which to reach the *cash value* of the six year's note of $2,153 33⅔, is by computing the interest due thereon at 8 per cent *per annum* from the date thereof, December 2, 1885, to the date of filing the account, December 2, 1888, and by adding the capital and interest thereto. This he claims to be $516 84, and by adding this to $2153 33⅔, we have...........................$2,670 17⅔
To this add the cash payment of............................ 1,076 66¼

And we have the sum of.................................$3,746 84
as the net proceeds of real estate, reduced to cash.

On this hypothesis the claim of the minors would be reduced to $1818, and this statement would be produced, viz :

To amount of proceeds of the sale of immovables reduced to a
cost basis................................................$3,746 84

CR.

By amount paid minors.......................$1,818 00
By amount balance attorneys' fees ................    84 10— 1,902 10

Balance down.......................................$1,844 74

From this balance opponent's mortgage debt and interest could be entirely paid, and there would remain a surplus to be distributed among ordinary creditors of the succession and community.

We take it to be perfectly clear that the opponent's second proposition is correct, and that the administratrix was without right to discount the six years' note in order to reduce it to *cash,* and then segregate it from other accounts, and apply it to the minor's claim, notwithstanding it is secured by a first mortgage on the property. There is, in law, no warrant for such a course of proceeding. The only correct course to be pursued is the one suggested by the opponent's counsel, *i. e.,* to compute the interest on the note from its date, to the date of filing the account, and add it to the principal, and take it *as* cash, at that time, and deal with it accordingly.

We see no impropriety in its being treated as cash by the administratrix, in making a settlement with the tutrix, inasmuch as the terms of the sale were recommended by a family meeting, the proceedings of which were duly homologated.

On the trial of the account and opposition, there was no other proof offered of the existence and the value of the stock of goods and merchandise, placed at $2000, than the inventory of the first community, which was made on the 17th of February, 1883, and the homologated account of the tutorship of Duhé, bearing date January 5, 1885. To the introduction of same, opponent urged several objections :

1. That the records do not furnish proof of the claims of the minor against the tutor.

2. That same are *ex parte* declarations of G. Duhé, unsupported by proof.

3. That the judgment homologating the tutor's account was rendered *ex parte,* and to which he was not a party, and by which his rights cannot be affected.

4. That said judgment is, and was null and void, and of no effect, be-

cause the record wherein it was rendered, shows that no proof was adduced of the items on said account.

5. That said judgment was and is an absolute nullity on its face, because it was rendered and signed at chambers.

All of these objections are correctly overruled by the judge *a quo* as going to the effect, and not to the admissibility of the evidence; but, considering them as evidence, said judgment and inventory do not constitute such proof of this item of $2000 as is necessary to establish it, as against a special mortgage creditor of the tutor individually.

In the adjudication to the surviving husband, of their mother's half interest in the common property, there is no mention made of it; and opponent was not cited and made a party to the final account, which is relied upon as establishing it. Opponent put the administratrix fully on her guard by specially denying and challenging the validity of that item.

Cetainly the judgment of homologation has no binding force or effect, so far as third persons are concerned; and opponent was not a creditor of the minors, but of Duhé, personally, and was a third person as to that account and judgment.

This item was properly rejected by the judge *a quo* and the debt of the minors reduced to $1818; but it was correctly held that it was secured by the ranking mortgage. This reduction will enable opponent to realize the amount of his debt with interest and ten per cent attorney's fees and there will be a surplus remaining. The allowance of the ten per cent attorneys' fees are objected to by the attorney for the accountant, but the same are stipulated for in the act of mortgage and are a constituent part thereof, and secured just as much as the capital, or interest of the debt itself. We think that same were incorrectly disallowed by the judge *a quo*. 29 Ann. 397, Mullen vs. His Creditors.

Many of the corrections we have suggested were made by the district judge, but not in the same manner and amount as we have done; we will, therefore, enumerate them in order to facilitate the administratrix in the restatement of her account, as it will be necessary that the cause be remanded for that purpose.

The following are the amendments required, viz:

1. That the administratrix should charge herself with the sum of $3230 as the proceeds of the sale of immovables, in lieu of $3147 32, as stated in account.

2. That, in order to reduce the six years' note of $2153 33⅓ to cash, she should charge herself with 8 per cent interest from its date, to the final account, $516 85.

3. The first four items on the account should be relegated from the first to the fifth rank, of such claims as are to be paid from the proceeds of the sale of movable in general.

4. That items 7, 8, 9, 10, 11, 12, 13, 14 and 15 are to be readjusted and classified anew by placing them in the order of payments directed in this opinion, as funeral charges, law charges, and expenses of last illness respectively.

5. Items 16 and 17 are not entitled to participate as priviled, but same may participate as ordinary debts.

6. Item 5 does not constitute a charge against either the succession or community.

7. Item 11 is approved; it being for attorney's fees, it is entitled to rank as a law charge.

Of the whole $265 90 is to be paid from the proceeds of the sale of the movables, and the residue of $84 10 to be first withdrawn from the immovables.

8. The amount due the minors must be reduced from $2818 to $1818; but it bears interest at the rate of 5 per cent from the date of Duhé's death, April 21, 1885.

9. That the 1885 taxes with interest should be paid from the proceeds, with first lien and mortgage thereon.

10. That the 10 per cent stipulated in the act of mortgage, as counsel fees, should be allowed and paid to the opponent, with rank of mortgage.

11. That any surplus there may be remaining shall be distributed ratably among ordinary creditors, after costs are paid.

It is therefore ordered and decreed that the judgment appealed from be annulled and reversed, and that the cause be remanded to the court *a qua*, with instructions to the administratrix to restate her account according to law and the views herein expressed; the costs of appeal to be taxed against the succession and the community.