**HUNT v. CARROLL et al.**

No. 3862.

Court of Civil Appeals of Texas. Beaumont.

June 19, 1941.

Rehearing Denied Dec. 17, 1941.

Powell, Rauhut & Gideon, of Austin, and Miller & Rutta, of Columbus, for appellant.

R. A. Weinert, of Seguin, and Vinson, Elkins, Weems & Francis, Tarlton Morrow, and Charles I. Francis, all of Houston, for appellees.

WALKER, Chief Justice.

This suit was instituted in county court of Colorado county by appellee, Mrs. Laura Belle Carroll, joined by her husband, Hulen R. Carroll, Jr., under the provisions of Articles 3433, 3434, 3435, R.C.S.1925, praying for judgment annulling and suspending the provisions of the last will and testament of Horace H. Hunt, executed on the 4th day of May, 1937. The testator died in Colorado county on May 31, 1938, and his will was duly admitted to probate. This suit was instituted by appellees as a proceeding in the probate of the will. We here give the will in haec verba:

"Last Will and Testament
of Horace H. Hunt.
"The State of Texas,
County of Colorado;
Know All Men by These Presents:

"That I, Horace H. Hunt, of Columbus, Colorado County, Texas, being of sound mind and memory and in good health but knowing the uncertainty of life and the certainty of death, and being desirous of making disposition of the property with which it has pleased God to endow me and which I may possess at my death, do make and publish this my last Will and Testament, hereby revoking and cancelling any and all other wills which I may heretofore have made.

"First: I desire that at my death I shall be decently buried without unnecessary parade or ostentation.

"Second: I desire and direct that my just and legal debts be paid, if there by any, as soon after my death as practicable and as good business judgment would require.

"Third: Having learned from long experience and many adversities, that money is hard to get, harder to save and easy to get rid of and believing that too much of it is a damage rather than a help to the inexperienced, and believing also that it is a husband's duty and privilege to provide for his wife and family through his own labor; and desiring to protect my daughter, Laura Belle, who is my only child, against future contingencies and adversities, I do, with deep love for her, make the following provisions for her and for such child or children as she may have.

"Fourth: So long as the present marriage of my said daughter may continue, no part of my estate or income thereof after my death shall be paid to her; but in event she should become a widow within ten years from date hereof, then and in that event so long as she does not remarry her present husband she shall receive for the support of herself and of any children she may have the sum of $250.00 (two hundred, fifty & no/100 dollars) per month, that is, the total sum of $250.00 per month to be paid to her to be spent by her and in any manner she may see fit for herself and children and without being accountable to any one as to how she may spend it or dispose of it, said payments when once begun to be paid on or about the fifteenth of each month thereafter, payable out of the income—(Page 2)—from my estate; but if the income be insufficient at that time to meet such payments, then a sufficient amount shall be taken from the accumulated funds to make up such payments of two hundred and fifty dollars per month.

"Fifth: In event any effort should be made by the said beneficiary, my beloved daughter, to break this will or to dispose of her prospective interest or benefits under this will by an attempted mortgage or sale, she shall thereby automatically forfeit any and all of her rights hereunder so far as said two hundred and fifty dollar per month payments are concerned, and in lieu thereof she shall receive only the some of one hundred dollars per month. I make this provision for, in my opinion, the protection of my said beneficiary, as I have observed in my contacts with the world that high-powered salesmen, confidence men and other crooks will some times persuade a beneficiary of an estate or of an interest in an estate (where the benefit is payable in installments) to sell such interest or benefits or rights under a will for a lump sum and at considerable sacrifice of its real worth, thereby defeating the purpose and will of a testator to make provision for the future protection of his loved ones. I hereby expressly forbid the sale or mortgage of any part of my estate or of any benefit hereunder, except as may hereafter be specifically authorized by me.

"Sixth: If at any time prior to her receiving any of the above mentioned bene-

fits under this will, my daughter should become seriously ill or in need of special medical attention and in the opinion of my executor or administrator it is necessary that she have aid from the estate, my said executor or administrator is authorized to expend such sum or sums as he in his own opinion may deem necessary, reasonable and proper for the benefit of her health, such expenditures (if any) not to be deducted from any payments which may thereafter become due her under this will.

"Seventh: In event my said daughter should die without issue or should she precede her present husband in death or— (Page 3)—if for any reason she fails to become entitled to benefits under this will, then and in such event my estate shall be divided as follows, towit, one third to my brother, Ben B. Hunt, one third to my brother, Warren Wood Hunt and one third to my sister, Mrs. Henry M. Hefley. Except, however, if my said daughter should die with issue, that is, should she leave a child or children, it is my will and I here direct that my executor or administrator look after the care and education of said child or children, using his own discretion and judgment as to their needs and education and as to the amount or amounts to be expended therefor and he shall not be required to account to any one for his manner of carrying out this provision, and it shall be at his own discretion as to whether he deems it proper to go to any expense whatever in this connection, it being my intention to leave it exclusively up to him as to whether anything whatever be expended in this connection and if so then as to the amount or amounts which shall be expended for said child or children.

"Eighth: If at the end of twenty years from date hereof my said daughter is still living she shall thereupon be entitled to receive my entire estate as it may then exist. But if she should die prior to the end of twenty years from this date and leave a child or children surviving her, such child or children (each) after completing its education as provided for in paragraph 'Seventh' above, shall receive the sum of fifty dollars per month until it attains the age of thirty years, as long as it is engaged in a legitimate occupation, and upon attaining thirty years of age it shall be entitled to receive its proportionate part of the estate but if it should die without issue prior to attaining thirty years of age its portion of the estate then remaining shall go to its brother (brothers) and sister (sisters), if any there be at that time but if there be none then its portion of the estate shall go to my brothers and sister above mentioned or to their heirs.

"Ninth: I hereby appoint my brother, Ben B. Hunt, as—(Page 4—Executor without bond of this my last will and testament, to carry out the terms and conditions of this will, and I direct that there be no court or probate procedure of any kind save the probating of this will and the return of an inventory and appraisement of the estate I shall die possessed of; and my brother, Ben B. Hunt, my said executor, is hereby authorized to dispose of all or any part of my estate after my death as in his judgment may be wise or expedient for the best interests of the estate and upon such terms and conditions as he may deem expedient and in keeping with good business judgment, and to collect all rev*enes*, pay all taxes due & do all other things necessary or proper in the management & control of my Estate. It is also my will that if for any reason my brother, Ben B. Hunt, cannot serve as executor of this will or if for any reason he does not desire to do so, he is hereby authorized and empowered to designate and authorize a trust company to act in his stead and place as executor of this will.

"Witness my hand this the 4th day of May, A. D. 1937.

"Horace H. Hunt.

"This is to certify that the Testator, Horace H. Hunt, signed the foregoing will this day in our presence, we each signing our names below, as subscribing witness, at his request in his presence and in the presence of each other.

"L. Altman
"Vick Paulos        Witnesses."

Appellees alleged, generally, the following grounds for annulling the will of Horace H. Hunt, as admitted to probate: (1) that the will is void because it is conflicting and unintelligible; (2) that it is contrary to public policy and void because it was intended to bring about a divorce; (3) that its provisions are contrary to the rule against perpetuities; and (4) that the independent executor named in the will (a brother of testator) may, in certain events, personally receive a share of the estate under Items 7 and 8, which disqualifies him to perform faithfully the duties incumbent on him under Item 7, regarding the education of testator's grandchildren.

Ben B. Hunt was named in this proceeding as the proper party to be served; he was duly served, and he duly filed his answer. In probate court the will was sustained as against all objections urged by appellees, but on their appeal to the district court of Colorado county, judgment was entered on September 23, 1940, granting them the relief prayed for, that is, judgment was entered suspending and annulling in all respects the last will and testament of Horace H. Hunt, as admitted to probate. The appeal was prosecuted to the Galveston Court of Civil Appeals, and is on our docket by order of transfer by the Supreme Court.

In entering judgment annulling and suspending the will, the trial court gave weight to the following collateral facts: Appellee, Laura Belle Carroll, was the only child of the testator, Horace H. Hunt. She was born December 29, 1917; her mother died when she was a young child; her father never remarried. Her husband, Hulen R. Carroll, Jr., is her first cousin, and three years her senior. Laura Belle and Hulen were secretly married in January, 1937, and their marriage was not discovered until April, 1937. Up to the date judgment was entered herein, two children were born to this marriage; the first, November 4, 1937, and the second, July 31, 1939. Before his marriage to Laura Belle, Hulen had been married and divorced; he has no profession but a general academic education; his parents are not people of means; at the time of the execution of the will and of the death of the testator, he was working as a "roughneck" for the Humble Oil & Refining Company. The testator left two brothers, Ben B. Hunt, named by him as his executor, and Warren Wood Hunt, both in middle age. He also left two sisters, Mrs. Hefley, of Cameron, named in the will as a beneficiary, and Hulen's mother, not named as a beneficiary. Ben qualified as executor and has continuously acted as such; he estimated the value of the testator's estate at forty or fifty thousand dollars, consisting primarily of producing oil royalties in eastern Texas.

■ The court did not err in overruling appellant's plea in abatement, on the ground that this proceeding to annul was improperly filed, with the same number, in the proceedings probating the will. Under Articles 3433, 3434, 3435, R.C.S.1925, appellees were required to bring this suit in the county court where the will was probated. The mere fact that it was given the number of the proceeding probating the will was not sufficient to make void nor voidable the final judgment herein.

■ The brothers and sisters of the testator were not necessary parties to this proceeding to annul and suspend the will of Horace H. Hunt, as admitted to probate; Kramer v. Sommers, Tex.Civ.App., 93 S.W.2d 460, 465.

■ The last will and testament of Horace H. Hunt is not so conflicting in its provisions as to be void. This proposition is based upon the conflict between Item 4: "So long as the present marriage of my said daughter may continue, no part of my estate or income thereof after my death shall be paid to her," and Item 8: "If at the end of twenty years from date hereof my said daughter is still living, she shall thereupon be entitled to receive my entire estate as it may then exist." The conflict between items 4 and 8 does not render the will void. In Martin v. Dial, Tex.Com.App., 57 S.W.2d 75, 79, 89 A. L.R. 571, the court said:

"With this direct conflict we should be compelled to give effect to the provision of the fifth clause, as it appears later in the will. It is the general rule that where there is an irreconcilable conflict between two clauses of a will, the later clause will prevail as being the latest expression of the testator's intent." See, also, 44 Tex. Jur. 714.

■ When construed by basic rules the will is not unintelligible, but its meaning is reasonably clear. Jarman on Wills, 6th Ed., 454, announces the following rule: "The modern doctrine is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not as was said in one case to repose on the easy pillow of saying that the whole is void for uncertainty."

See, also, Jones' Unknown Heirs v. Dorchester, Tex.Civ.App., 224 S.W. 596; St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S.W.2d 47. It is also a well grounded rule that "every will must be construed, if possible, so as to avert intestacy"; and courts "ought not search for a construction which nullifies the will." Sims v. McMullan, Tex.Civ.App., 22 S. W.2d 313, 316. The dominant purpose in

the construction of a will is to ascertain the intention of the testator in the disposition of his estate, 44 Tex.Jur. 680, 681, which must be deduced from the language of the will; in doubtful cases material facts on the issue which tend to shed light upon the intention of the testator may be considered, 44 Tex.Jur. 688; when ascertained, the intention of the testator must be effectuated, unless it contravenes the public policy of the state or its established law. 44 Tex.Jur. 690. In determining the intention of the testator, specific clauses of the will must yield to its dominant purpose, deduced from its four corners. 44 Tex.Jur. 694. Where the will is subject to construction on the issue of "intention," that construction will be adopted which sustains the will, as against a construction which would make it void. 44 Tex.Jur. 702. Then, there is the basic, fundamental rule that a will must be liberally construed to prevent intestacy. 44 Tex.Jur. 700.

Construed in the light of these general rules, we conclude that the will is not unintelligible, but that the testator provided the following plan for the distribution of his estate: (1) At the end of twenty years from the date of the will, if his daughter is living she will receive the entire estate, as it might then exist, free of all control by the executor; but during the first twenty years if she remains the wife of Hulen she will receive no part of the estate, except by Item 6. (2) In the event she should become a widow within ten years from the date of the will, and if by divorce, she should not remarry Hulen, she would receive $250 per month for her support. (3) In the event she should become a widow during the second ten-year period from the date of the will, no provision is made for her support, except by Item 6. (4) If, after receiving the estate, the daughter should die without leaving surviving children, the estate would go to the brothers and sister of the testator named in the will. (5) If the daughter should die prior to twenty years from the date of the will, survived by children, the estate would go to the children in equal shares, subject to control by the executor, on the conditions named in the will; the executor's authority in this respect is clear and unambiguous. (6) As each child reaches the age of thirty years, if it inherits, it will receive title and possession of its proportionate share of the estate. If a child should survive its mother and should die without children of its own, and before reaching the age of thirty years, its share of the estate would go in equal shares to its surviving brothers and sisters. In the event all the children surviving the daughter should die before attaining the age of thirty years without leaving surviving children, the estate would go to the testator's brothers and sister named in the will. (7) If the daughter should die without leaving children surviving her, the estate, as it then exists, would go to the testator's named brothers and sister in equal shares. The intention of the testator in all other respects requires no construction.

Having determined the intention of the testator and his general plan for the distribution of his estate, the next inquiry is whether the will as thus construed contravenes the public policy of the state or the rule against perpetuities. On this issue, appellees' first point is that the will is void because it manifests a clear intent to induce Laura Belle to divorce Hulen, and that it is subject to no other construction. The testator did not expressly declare that intention. The preamble to the will manifested a lawful intention; that it was the duty of Hulen to support his wife, that money was hard to get and harder to save, and that it was his intention to protect his daughter against future contingencies and adversities; he declared in his will a deep love for his daughter. The law left to him the right to dispose of his estate in the manner best suited in his judgment to accomplish these express purposes. While it is clear from the terms of the will that the testator did not want his property to be controlled directly or indirectly by his daughter's husband; the undisputed facts give the reason for his decision in that respect, Hulen was improvident; he had been married and divorced; he had married his daughter in a secret marriage which was concealed for about three months. As against a construction that the testator was trying to induce his daughter to divorce her husband, the will is subject to the construction that it was his intention to provide for her support should he divorce her. A legitimate purpose on the part of the testator is apparent on the face of the will, more apparent on a reasonable construction of its terms than the purpose to induce his daughter to divorce her husband; that is, it was the intention of the testator not to induce a divorce, but to provide

for the support of his daughter in the event of a divorce, which is a valid provision. Hood v. St. Louis Union Trust Co., 334 Mo. 404, 66 S.W.2d 837. On this construction the will is valid. Ellis v. Birkhead, 30 Tex.Civ.App. 529, 71 S.W. 31.

The point on the issue of perpetuities is whether the estate would vest in Laura Belle's children immediately on her death, if she should die within twenty years from the date of the will, leaving surviving children, or whether it would vest in the children on their attaining the age of thirty years, a period of time beyond the limit of the Rule.

Having no statute defining perpetuities, as denounced by Section 26 of Article 1 of our state constitution, Vernon's Ann.St. the common law on this issue is the law of the state, which is thus stated by Gray, Perpetuities, 3d Ed., 1915, § 201: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest."

Our Supreme Court made the following statement of the Rule in Clarke v. Clarke, 121 Tex. 165, 46 S.W.2d 658, 661: "The rule against perpetuities is that no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest, to which is added in a case like this the period of gestation."

See, also, Neely v. Brogden, Tex.Com. App., 239 S.W. 192; Brooker v. Brooker, 130 Tex. 27, 106 S.W.2d 247. The Rule requires only that the interest vest in the period prescribed by the Rule; it does not prohibit the duration of the interest beyond that time. Prof. W. Barton Leach, Perpetuities, 51 Harvard Law Review, 638, 639; 48 C.J. 947–951; 32 Tex.Jur. 836, § 9; Gray, Perpetuities, 3d Ed., 1915, § 205.

We take the following definition of "executory devise" from 15 Words & Phrases, Perm.Ed., p. 608, Judicially Defined: "An 'executory devise' of lands is such a disposition of them by will that no estate vests at the death of the devisor, but only on the happening of a future contingency."

The same authority (pages 606, 607) makes the following distinction between an "executory devise" and a "remainder": "A devise is executory when made to a person, whether in being or not, to take effect at a given period after the death of the testator, or at the death of a stranger. If, however, it is to take effect upon the death of the person having an immediate precedent estate, it will not be an executory devise, but a remainder. * * * An executory devise differs from a remainder in that by the former a fee simple or other less estate may be limited after a fee."

In defining the nature of an executory devise, 1 Bouvier's Law Dictionary, Rawles Third Rev., gives the following quotation from 4 Kent 257: "By the executory devise no estate vests at the death of the devisor or testator, but only on the future contingency."

The following statement of the law is also from 1 Bouvier's Law Dictionary, Rawles Third Rev., citing Smith, Ex. Int. 391; 2 Bla.Com. 174: "In order to prevent perpetuities, the rule has been adopted that executory interests must be so limited that from the time of their limitation they will necessarily vest in right (not necessarily in possession) at a period not exceeding that occupied by the living * * * and an absolute term of twenty-one years afterwards * * *."

From Gray on Perpetuities, quoted in Anderson v. Menefee, infra: "A remainder is vested if, at every moment during its continuance it is ready to come into possession, whenever and however the preceding estates determine. A remainder is contingent if, and in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the preceding estates, is necessary."

We take the following definition of the term "vest" as used in defining perpetuities, from the authorities cited in Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904, 908, and in the words of the authorities cited. The word "vest" means to give an immediate, fixed right of present or future enjoyment: a vested estate is an interest clothed with a present, legal, and existing right of alienation: estates are vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate; they are contingent while the person to whom, or the event upon which they are limited to take effect remains uncertain.

It is our conclusion that the interest of Laura Belle's children under the

will is in the nature of an executory devise, since the legal title is in the executor, an equitable executory devise; and that an executory devise vests on the same conditions controlling the vesting of a remainder. The following Texas authorities are directly in point and support this conclusion. Jones v. Hext, infra; Lozano v. Guerra, Tex.Civ.App., 140 S.W.2d 587; Norman v. Jenkins, Tex.Civ.App., 73 S. W.2d 1051. Clearly, on the definitions cited above, the interests of the devisees under the wills in litigation in these cases were in the nature of executory devises. Camden Safe Deposit & Trust Co. v. Scott, infra, also sustains this conclusion.

On authority of the cases cited above, defining an executory devise or interest, we overrule appellees' proposition: "Executory interests are not vested until they take effect in possession"; and their proposition: "The executory devise to the grandchildren, to be good, must vest in possession within twenty-one years after lives in being." Whatever may be the law on this point in other states (appellees cite 2 Simes 83; Gray on Perpetuities, § 1147; Tiedeman on Real Property, Enlarged Edition, §§ 540, 544; Washburn, 4th Ed., pages 703, 715, 718), it is our conclusion that in Texas equitable executory devises can vest prior to the termination of the trust. So, an estate, whether a remainder or an executory devise or interest is vested within the Rule when it is vested in interest; it can vest in interest before it vests in possession; the requirements of the Rule in this respect are complied with when a future estate or interest becomes vested in interest, regardless of when it becomes vested in possession. 48 C.J. 947; Leach, Perpetuities, 51 Harvard Law Review, 638, 647; 32 Tex.Jur., 836; Jones v. Hext, Tex.Civ.App., 67 S.W.2d 441; Norman v. Jenkins, Tex.Civ.App., 73 S.W. 2d 1051, 1053; Camden Safe Deposit & Trust Co. v. Scott, 121 N.J.Eq. 366, 189 A. 653, 110 A.L.R. 1442.

The following additional general rules are in point in the construction of Horace H. Hunt's will. After an estate is once vested, under the Rule it is immaterial how long it may last. Anderson v. Menefee, supra; 32 Tex.Jur. 836. In construing a will on the issue of perpetuities, that construction, with a reasonable basis in the language of the will construed as a whole, should be adopted which does not violate the Rule, Hancock v. Butler, 21

Tex. 804; thus, an interest under a will should be construed as vesting at the earliest possible time, within a reasonable construction of the terms defining the period of time, so that the estate may not be destroyed by the Rule. In 2 Simes on Future Interests, § 384, it is said:

"Attention should be directed to the doctrine everywhere recognized that a gift is presumed to be vested and not contingent, and that, as between a construction which effects an earlier or a more remote vesting, the presumption is in favor of the earlier vesting. This doctrine has been frequently announced by the courts and applied under a wide variety of circumstances." Caples v. Ward, 107 Tex. 341, 179 S.W. 856; 44 Tex.Jur. 737. In determining whether an interest is vested within the meaning of the Rule against Perpetuities, a distinction must be drawn between conditions precedent and conditions subsequent. If all conditions precedent have been satisfied, the interest vests within the meaning of the Rule, although it may remain subject to being divested upon the happening of some condition subsequent. 2 Simes, Future Interests, § 498, page 357; 1 Simes, Future Interests, § 95, pp. 161, 162. In doubtful cases, whether a condition is precedent or subsequent, the courts are inclined to hold that it is subsequent, thus favoring the earliest vesting of estates. Gray, Rule Against Perpetuities, 3d Ed., 1915, § 103.

On due application of these general rules, we make the following construction of the will of Horace H. Hunt, as against appellees' contention that it violates the Rule against perpetuities. The only condition precedent to the vesting, of an interest in the estate in each of the children who may survive Laura Belle is her death within twenty years from the date of the will, that is, if Laura Belle should die within twenty years from the date of the will, her children, if any survive her, are named as the first takers, and the share of each child is fixed by the terms of the will, with remainder on the conditions of the will, to the named brothers and sister of the testator. This construction of the will follows because by the terms of Item 8, the daughter, if living at the end of twenty years from the date of the will, will be vested with title in fee to the estate with the right of immediate possession and control. If the daughter should die within the period of

twenty years from the date of the will, each child who survives her will, immediately on her death, become vested with an equitable title to a proportionate share of the testator's estate then remaining. The provision that if a child "should die without issue prior to attaining thirty years of age, its portion of the estate then remaining shall go" to the other persons designated, constitutes a condition subsequent rather than a condition precedent. The condition is one which may operate to divest an estate which has already vested, rather than a condition precedent to the vesting of the estate. The provision, that upon attaining thirty years of age each child shall receive its proportionate share of the estate, fixes the time when the trust shall terminate as to each child; it is not a condition precedent to the vesting of the beneficial interest.

■ In support of our analysis of the will, we direct attention to its specific terms which point to the conclusion that the gifts to the grandchildren shall vest at the death of Laura Belle, if she should die within twenty years from the date of the will, rather than that the gift to each grandchild shall remain contingent until it shall reach the age of thirty years. The language of the will, in describing the gift over in the event of the death of the grandchildren without issue under thirty years of age, refers specifically to each child's "portion of the estate then remaining." This language indicates that a grandchild, dying before attaining the age of thirty years, had a portion, which of itself necessarily implies a prior vested interest in each grandchild; for if it were not vested with a portion until it attained the age of thirty years, there would be no occasion for the limitation over in the event of its death at a prior date; it would have had no portion to pass by limitation over to another. The term "its portion" occurs in two different places. These phrases indicate the testator's intention that he had given something to be received at a future time, that is, a vested interest. It is significant, too, that the will refers to the "portion of the estate then remaining." The testator contemplated that each grandchild should be educated out of its individual portion of the estate, and that its portion was to be determined at the death of testator's daughter; only that which remained of the portion of each child was to be divested in

the event of death without issue before the age of thirty. The testator's intention that the gifts to his grandchildren should vest upon the death of his daughter is indicated by his declaration that if any grandchild "should die without issue prior to attaining thirty years of age, its portion of the estate then remaining shall go to its brother (brothers) and sister (sisters), if any there be at that time, but if there be none, then its portion of the estate shall go to my brothers and sister above mentioned or to their heirs." This language manifests an intention on the part of testator that the gifts to his grandchildren should vest at the death of his daughter, if within twenty years from the date of the will. On this construction, the gifts by the testator to his grandchildren vest within the period of the Rule against Perpetuities, since the gifts vest immediately upon the death of a life in being, his daughter.

■ The existence of the condition subsequent providing for a gift over if the grandchildren should die before reaching thirty years of age, without leaving surviving children, does not affect the prior vested gift to each grandchild. I Simes, Future Interests, § 79, p. 131. That the gifts to the grandchildren, on the death of the daughter within twenty years from the date of the will, are to be held in trust for each grandchild until it shall reach the age of thirty years does not violate the Rule against Perpetuities. This condition of the will relates only to the time when each grandchild shall be given possession and control of its portion of the estate; it has no effect on the vesting of the estate.

The fact that $50 per month of the income of the estate is to be paid each grandchild, on the conditions named in the will, not as an annuity but as a part of the income issuing out of the estate, supports our conclusion that the portion of the estate willed to each grandchild vests in him immediately on the death of his mother, in the event she should die within twenty years from the date of the will. Anderson v. Menefee, supra. From the very nature of the testator's estate, producing oil royalties, the payment of $50 per month might be made from the corpus of the estate and not from rents and interest. A payment from the royalties would be from the corpus of the estate as it existed on the death of the testator, exactly as if he had directed that a certain house and lot be sold and the proceeds

of the sale be distributed to the grand-children on the conditions named in the will for the payment of the $50 per month.

Whether or not Ben B. Hunt is qualified to serve as an executor of the estate of his deceased brother is an immaterial inquiry on the issues presented by this appeal. This point is controlled by the following proposition from Willis v. Alvey, 30 Tex.Civ.App. 96, 69 S.W. 1035, 1036: "Equity never wants a trustee, and, if the trustee named is for any reason disqualified to take, the court will appoint a competent trustee."

It is our order that the judgment of the lower court be reversed and this cause remanded with instructions that judgment be entered denying appellees the relief prayed for.

Reversed and remanded with instructions.