BROWN et al. v. CANAL BANK & TRUST CO. et al.

No. 10808.

Circuit Court of Appeals, Fifth Circuit.

April 14, 1944.

---

Roberts C. Milling, of New Orleans, La., and L. J. Benckenstein, of Beaumont, Tex., for appellants.

Wm. C. Dufour and Wood Brown, both of New Orleans, La., for appellees.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

This action was brought by H. L. Brown, E. W. Brown, Jr., and Mrs. E. W. Brown, the sons and widow of Dr. E. W. Brown,

deceased, residents of Texas, against the Canal Bank & Trust Company, in Liquidation, a Louisiana corporation, and others, to remove a cloud upon their title to and enjoin the disposition of certain securities pledged to the bank as collateral to secure a debt evidenced by a promissory note executed by H. L. Brown and endorsed by E. W. Brown, Jr., and Mrs. E. W. Brown; and for a decree adjudging that the "note has been paid in full."

The right of the plaintiffs to the relief sought depends upon whether, as they claimed, five-sixths (5/6) of an amount on deposit in a savings account in the bank on the date it was placed in liquidation [1] in the name of Estate of Dr. E. W. Brown, was on March 20, 1933, maturity date of the note, under the terms of the note and the Louisiana law, automatically compensable against the indebtedness evidenced by the note. If the set-off of such amount automatically was effected as claimed, then the amount tendered into Court during the trial was the balance remaining due and owing upon the principal of the note with interest; and plaintiffs, upon payment of such attorney's fees and cost as may be found by them due, are entitled to a cancellation of the note and a return of the securities pledged to secure its payment. If the account was not so compensable, the bank is entitled to the relief sought in its answer and reconventional demand, to-wit, a dismissal of plaintiffs' suit and a money judgment for the full balance due on the note, plus interest and attorney's fees, with recognition and maintenance of its lien and privilege on the pledged property.

The solution to the problem thus posed involves first a determination of the nature of the ownership of the savings account, and second, if the nature of the ownership of the savings account be resolved favorably to plaintiffs' contention, the right of set-off against the indebtedness represented by the note. The Court below held that the deposit was owned by a partnership operated in the name of Estate of E. W. Brown, and composed of Mrs. E. W. Brown, E. W. Brown, Jr., H. L. Brown, R. A. Moore, and Babette Moore, or that the deposit was owned by a composite entity operated in the name of Estate of E. W. Brown; that in either event the owner of the deposit was a legal entity separate and distinct from the partners or beneficiaries thereof; that the note against which compensation was claimed was the individual obligation of H. L. Brown as maker and E. W. Brown, Jr., and Mrs. E. W. Brown as endorsers; that there was not present the identity of parties and "mutuality that of itself envisages" a blotting out of one debt for another; and that therefore the deposit was not compensable against the individual debt of the partners or beneficiaries. Judgment accordingly was entered granting the relief prayed by the bank, and this appeal was prosecuted therefrom.

Dr. Brown died testate, at his residence in Orange, Texas, on June 16, 1917. His will named Mrs. E. W. Brown, H. L. Brown, E. W. Brown, Jr., and Fannie Brown Moore as executors, and vested in them complete power to carry out the terms of the will without bond and independently of the courts except insofar as the law required resort to the courts. Except for specific bequests, the will directed that the properties of the estate should be kept intact for ten years under the management of the executors, during which time the three children should use the income thereof and at the conclusion of the period the properties should be divided equally between the three children.

Fannie Brown Moore died intestate, at her residence in Orange, Texas, in 1918, leaving a husband, R. A. Moore, and a minor child, Babette Moore. No administration was had of her estate. Babette Moore was married on May 7, 1931, and reached her majority on August 20, 1932. After the death of Fannie Moore the three remaining executors continued the administration of the estate. The vast properties of the entire community estate were kept intact, except for the payment of debts and specific legacies, under the management of the executors, until June 16, 1927. Continuously thereafter until a date subsequent to May 20, 1933, when the bank went into liquidation, the properties of the decedent's estate and his widow's community estate remained intact under the management of H.

---

[1] From March 1, 1933, until March 20, 1933, the bank was closed, except on March 3, on which date depositors were permitted to withdraw 5% of their balances. On March 20, the President, by executive order, authorized the Secretary of the Treasury to permit any member bank of the Federal Reserve System to reopen. The Canal Bank was not reopened, and on May 20, 1933, it was placed in liquidation.

L. Brown, E. W. Brown, Jr., Mrs. E. W. Brown, and R. A. Moore, the father of Babette Moore, but their dealings with respect to the properties after June 16, 1927, were as individuals who were joint owners rather than as executors.

1. The questions before the Court involve transactions which took place during the ten-year period fixed in Dr. Brown's will. We find it necessary, therefore, to consider the situation only with respect to the administration by his executors during said period of time. We do not agree with the Court below that such administration, even though it included the interest of the surviving widow in the common properties, created a composite entity, separate and distinct from the widow and from the beneficiaries named in the will, or an entity in the nature of a partnership.

In his will, Dr. Brown expressly declared that he did not want the courts to have anything to do with his estate; such a provision is permitted under Article 3436 of the Revised Civil Statutes of Texas, 1925.[1a] Under the provision of Dr. Brown's will, his executors are termed independent executors. The authority of independent executors under Texas law is set forth in Simkins' Administration of Estates in Texas, 3rd Ed., Sec. 128, pp. 170-171, as follows:

"An executor in a will so drawn after having complied with the statute, is termed an independent executor, acting directly under the powers granted in the instrument, without interference from the probate court while the executor continues to discharge his trust, and is actively performing that duty. The probate court has no control over him in the faithful performance of his duties as provided in the will, and the only action which the court is required or authorized to take is to probate the will. The probate court has no jurisdiction to settle accounts between him and the heirs, or to enter orders setting aside the homestead and making allowances, or to appoint an administrator while an independent administration is pending."

Under Texas law and the terms of Dr. Brown's will, the legatees or devisees named in the will became joint owners of the properites belonging to his Estate at the time of his death.[2] Under Texas law, as long as his surviving widow held her interest in the community estate commingled with the interests of his heirs, she held as tenant in common.[3] We, therefore, conclude that the residuary legatees and devisees under Dr. Brown's will became tenants in common with his widow, following his death, of all community properties,[4] and that this status continued throughout the ten-year period during which the executors administered the joint properties.

The title to said properties and the income therefrom during said ten-year period was vested in Mrs. E. W. Brown to the extent of one half and in H. L. Brown, E. W. Brown, Jr., and Mrs. Fannie Moore—and following her death, in her minor daughter, Babette Moore—to the extent of the other half. The deposit carried in the Canal Bank & Trust Company in the name of Estate of Dr. E. W. Brown, made up of funds in said bank at the time of his death, plus $50,000 deposited by the executors in 1924, and interest accruals credited thereto thereafter, was owned in 1925, when transferred to savings account in said bank, by the widow, the two sons, and granddaughter of Dr. E. W. Brown in the proportion of one-half to the widow and of one-half to the two sons and to the granddaughter. Under Dr. Brown's will, the administration by his executors of the properties which made up his Estate at his death came to an end on June 16, 1927. On said date the restriction in said will against dividing said properties was removed, and thereafter properties and in-

---

[1a] This article provides: "Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate."

[2] Article 3314 of the Revised Civil Statutes of Texas, 1925, provides: "When a person dies, leaving a lawful will, all of his estate devised or bequeathed by such will shall vest immediately in the devisees or legatees; and all the estate of such person, not devised or bequeathed, shall vest immediately in his heirs at law * * *."

See also Jones et al. v. Hext et al., Tex. Civ.App., 67 S.W.2d 441; Giraud v. Crockett, Tex.Civ.App., 142 S.W.2d 243; Hunt v. Carroll, Tex.Civ.App., 157 S.W. 2d 429, 437; Sewell v. Taylor, Tex.Civ. App., 224 S.W. 530, 531.

[3] Wingo v. Rudder, 103 Tex. 150, 124 S.W. 899.

[4] Akin v. Jefferson, 65 Tex. 137, 142.

come were subject alike to division at the will of the interested parties. We find no evidence anywhere in the record to show that the status of the savings account in said bank changed or that the account was dealt with in any way at any time subsequent to June 16, 1927; nor is there evidence anywhere in the record to show that said bank account was ever involved in any partnership arrangement. We conclude that said bank account was jointly owned by Mrs. E. W. Brown, her two sons, and granddaughter in the proportion heretofore stated, and was so owned on March 20, 1933, when the note held by the bank matured.[5]

■ 2. Under Louisiana law compensation takes place as a matter of course between two debts which have equally for their object a sum of money and which are equally liquidated and demandable. Article 2210 of the Civil Code of Louisiana makes an exception of restitution of a deposit and a loan for use. As the sum which plaintiffs desire to set-off is five-sixths (5/6) of the deposit in the Canal Bank & Trust Company, standing in the name of the Estate of Dr. E. W. Brown, of which they are owners, it becomes necessary to ascertain if the prohibitions of Article 2210 against setting-off a deposit against the note due said bank has been waived. This may only be determined by the provisions of the note itself.[6] Referring to the note, we find that paragraph 2 provides:

"The makers, endorsers, guarantors, and sureties of this note hereby severally waive presentment for payment, demand, protest, and notice of protest * * * and hereby agree and acknowledge that this is and shall be a solidary obligation."

That paragraph 6 provides:

"Unless this note be paid at its maturity, or when otherwise due, as herein provided, any money, * * * on deposit with, in possession or under the control of or held by said bank for any purpose whatsoever, * * * to the credit of or for account of *the undersigned, or any of them,* shall at once be and stand applied to the payment of this note, or any other debt, * * * due or to become due, by *the undersigned, or any of them,* to the said bank."

That paragraph 3 provides:

"This note * * * and any and every other debt, liability, or obligation * * * due or to become due * * * by *the undersigned or any of them,* * * * shall be secured by the pledge of the securities or property * * * that may be * * * held by or left in the possession, or under the control of said bank * * * by *any of the parties* hereto * * *."

That paragraph 4 provides:

"In case of non-payment of this note at its maturity, * * * or in case of non-payment of any other debt, * * * of *the undersigned, or any of them,* * * * the said bank is hereby * * * authorized to sell said securities or property, * * * at public or private sale * * * and said bank * * * is hereby * * * authorized * * * to apply the proceeds thereof (1) to the payment of all costs * * *; (2) to the payment of this note, * * * or to pay any other debt * * * due * * * to said bank by *parties hereto, or any of them.*"

It is contended by appellants that the maker and endorsers of the note are referred to in the printed provisions of the note sometimes as the "undersigned, or any of them," sometimes as the "parties hereto, or any of them." On the other hand, it is contended by the appellees that said language has reference to the maker and not to the endorsers. If the contention of the appellants be correct, then under the express language of the note,[7] the maker and the endorsers have waived the prohibition in their favor against setting-off or compensating the note due the bank by the deposit in the bank. If the contention of the appellees be correct, the language in the note is a waiver on the part of the maker, H. L. Brown, only, and has no application

---

[5] At its request the bank was furnished by H. L. Brown with a financial statement on or about November 1, 1931. This statement was a detailed list of assets, including cash in banks, under the following heading: "Dr. E. W. Brown Estate Property, Partial List, Jointly Owned. Mrs. Carrie L. (E. W.) Brown, One-Half, E. W. Brown, Jr., One-Sixth, H. L. Brown, One-Sixth." The bank, also received credit reports from a commercial agency as late as the early part of 1933 containing the same information as set forth in the financial statement. If the bank, therefore, did not have prior notice, it was put on notice, by the information furnished, of the identity of the owners of the bank account.

[6] In re Canal Bank & Trust Co., Intervention of Wainer, 178 La. 961, 152 So. 578.

[7] See paragraph 6 quoted above.

to the endorsers, Mrs. E. W. Brown and E. W. Brown, Jr.

The language of the note, "the undersigned, or any of them," or "the parties hereto, or any of them," is ambiguous. The record, however, shows (1) that this note is one of several renewals of the original note bearing date June 30, 1926, executed by H. L. Brown, and endorsed by his mother and brother, and (2) that the parties have stipulated, with reference to the original note and the renewals of said note down to and including September 19, 1932, as follows: "All of the notes above mentioned were of the non-collateral form of note used by the Canal Bank & Trust Company, and were of the form of the note of September 28, 1926, a photostatic copy of which is hereto attached and called Exhibit 'E.'" The note, therefore, given on June 30, 1926, by H. L. Brown to said bank, is identical in form with the note of September 28, 1926, according to the stipulation. Examining that note, we find the following provision:

"At the maturity of this note, or when otherwise due, as above provided, *any and all money,* stocks, bonds, or other securities or property of any nature whatsoever *on deposit with,* or held by, or in the possession of, *said bank* as collateral or otherwise, to the credit or for *the account of the makers, endorsers, or other parties hereto, or any of them, shall be and stand applied forthwith to the payment of this note,* or any other indebtedness due said bank *by said parties, or any of them.*"

We think the waiver of restitution of deposit contained in the original note, and in the non-collateral notes thereafter given in renewal, dispels the ambiguity in the language of the renewal note now held by the bank, and compels the construction that "the undersigned, or any of them," or "the parties hereto, or any of them," has reference to maker and endorsers alike.

So concluding, we are of the opinion that under the terms of the note and the Louisiana law compensation took place on March 20, 1933, the day the note matured, as to five-sixths (5/6) of the amount of the deposit in said bank in the name of Estate of Dr. E. W. Brown, the property of Mrs. Brown and her two sons. We are further of the opinion that attorney's fees are due by appellants on the unpaid balance on the note as of March 18, 1938, when appellees' answer was filed and the reconventional demand and counterclaim for judgment on said note was made.[8]

Reversed and remanded.

---

[8] Mullan v. His Creditors, 39 La.Ann. 397, 2 So. 45; Succession of Duhe, 41 La.Ann. 209, 6 So. 502; Zeigler v. Creditors, 49 La.Ann. 144, 158, 21 So. 666; Succession of Burke, 107 La. 82, 85, 31 So. 391.