ALMA WILLIAMS, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26984, 26985, 26986, 26987, 26988, 26989. Promulgated April 25, 1951.

---

[1] Proceedings of the following petitioners are consolidated herewith: R. L. Williams; Florence Herder; Estate of George Herder, Jr., Deceased, by George Herder, III, Administrator; L. D. Allen; and Vida Allen.

894

*Robert Mueller, Esq.*, for the petitioners.
*Joseph P. Crowe, Esq.*, for the respondent.

898

OPINION.

BLACK, *Judge:* The first and primary issue which we have to determine is whether the estate of George Herder, Sr., and the estate of Mary Herder were in the process of administration during the taxable years 1944, 1945, and 1946, within the meaning of the applicable statute.[3]

Respondent, in support of his determination that neither of the estates was in the process of administration during the taxable years and that the income in question was taxable to the petitioners and not to the estates, relies upon section 29.162-1 of Regulations 111 printed in part in the margin.[4] Petitioners on the other hand, contend that the respondent is without the authority to allocate the net income to beneficiaries while the estate is in the process of administration under state law. In support of this position petitioners rely in particular upon *Frederich* v. *Commissioner*, 145 F. 2d 796.

[3] Internal Revenue Code.
SEC. 161. IMPOSITION OF TAX.
(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including

\* ~ \* \* \* \* \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate;

[4] Sec. 29.162-1. INCOME OF ESTATES AND TRUSTS. \* \* \*

\* \* \* \* \* \*

The income of an estate of a deceased person, as dealt with in the Internal Revenue Code, is therein described as received by the estate during the period of administration or settlement thereof. The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. If an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not. No taxable income is realized from the passage of property to the executor or administrator on the death of the decedent, even though it may have appreciated in value since the decedent acquired it. But see sections 42, 43, and 44. \* \* \*

There is no dispute herein as to the amount of net income earned during each of the taxable years before us. The given amount of net income for the three years has been reported by the executors on the income tax returns filed by the two estates. The income tax liability of the estates was computed, and that tax liability has been paid. Distributions of cash from the estates were made to petitioners during the taxable years, but such receipts were considered distributions of principal and not included in the taxable net income on the individual income tax returns of the petitioners. The amount of cash actually distributed by the estates during the taxable years here, or the amount that the executors failed to distribute, in no way affects the issue before us. Respondent contends that the only income tax liability is that of the petitioners, that a prorata share of the given amount of net income should be added to the net income of each petitioner as reported on their individual tax returns for each year. The proration of net income, if proration is proper, is to be made on the formula of one-sixth to each petitioner. Three of the petitioners are the three legatees of the estates and entitled to the assets to be distributed, two of the petitioners were husbands of legatees, and the sixth petitioner was a wife of a legatee. All petitioners filed income tax returns separate from their spouses on the community property basis.

The respondent is in no way attempting to set aside a decision or overrule an order of a state court; nor is the respondent in any way ordering, or attempting to order, the estates to make distributions of cash to the beneficiaries of the estates; nor is the respondent interfering with petitioners' way of doing business. He is simply holding that within the meaning of section 161, I. R. C., and the applicable Treasury regulations, neither of the estates was in process of administration during the taxable years.

We must now decide whether the Commissioner under the facts of these proceedings had the authority to determine that periods of administration of the estates were being prolonged without adequate reasons, and to assess a tax against each petitioner on his prorata share of the net income. In our consideration of the question presented to us here, the interpretation of the law, if possible, should be to give "a uniform application to a nationwide scheme of taxation." See *William C. Chick*, 7 T. C. 1414, affd. (C. A. 1), 166 F. 2d 337.

The petitioners rely upon *Frederich* v. *Commissioner, supra*. In that case the circuit court held that the Commissioner lacked the authority to determine that the estate of Herman Frederich was no longer in process of administration. There the estate was being continued by the administrator under affirmative orders of a local probate court. Such an order does not exist in regard to the estates before us, and moreover, the petitioners herein were independent

executors.[5]   The decedents in their wills nominated their independent executors, providing:

> \* \* \* no other action shall be had in the Probate Court in the administration of my estate other than to prove and record this will, to return an inventory and appraisement of my estate and file a list of claims.

Four independent executors in the George Herder, Sr., estate and three independent executors in the Mary Herder estate were nominated by each decedent and served in that capacity.   Only two of the independent executors of each estate at the time of the hearing of these proceedings were serving in that capacity, the others having died.   Apparently, the petitioners would continue the estates in process of administration more or less indefinitely.

In the recent case of *Josephine Stewart*, 16 T. C. 1, involving a taxpayer who occupied the same position as petitioners herein, we decided that the Commissioner is vested with the authority, as a matter of law, to determine that the period of administration was being prolonged without purpose, and the income was taxable to the beneficiary.   In that case, the taxpayer was an independent executor of the estate of her deceased husband who was domiciled in Texas.[6]   In addition to being independent executor, the tax-payer was the sole beneficiary of the estate.   Similarly, the petitioners in the instant proceedings are the beneficiaries of the decedents' estate and are, for all practical purposes, entitled to receive upon liquidation all the remaining assets of the estates.   For the reasons stated in the *Chick* case, *supra*, and particularly as set forth in the *Stewart* case, *supra*, we hold that the Commissioner was vested with the authority, as a matter of law, to determine that the two Herder estates were not in process of administration during the taxable years if the facts justified it.

We now consider whether the facts show that the two estates were in process of administration within the meaning of the applicable statute and regulations during the taxable years.

We shall first take up the estate of George Herder, Sr.   Some of the things which we shall say about his estate will also be applicable to the estate of Mary Herder.   George Herder, Sr., died on March 29, 1934, and his estate had been in process of administration for 10 years up to the first taxable year here involved.   Petitioners contend that

---

[5] The status of an independent executor is defined in the cases of the Texas courts, as cited in the *Stewart* case, and also at 21 Am. Jur. 836.   At 34 C. J. S. 1349 the term, independent executor, is defined as "By authority of some statutes, administration independent of the control of probate courts may be had where the testator clearly indicates in his will that such is his desire.   The executor named, who is qualified to act when the will is admitted to probate, at which time the jurisdiction of the court terminates, is called an 'independent executor'."   In the State of Texas the administration of estates, independent of the control of probate jurisdiction, is authorized by statute.   *Tex. Civ. Code* (Vernon's 1925), § 3436-3447; *First State Bank of Stratford, Texas v. Roach* (C. A. 5, 1941), 124 F. 2d 325; *Brown v. Canal Bank and Trust Co.* (C. A. 5, 1944), 141 F. 2d 832.

[6] See also *Estate of W. G. Farrier* (1950), 15 T. C. 277.

there were sufficient reasons for continuing the administration of the estate of George Herder, Sr., for these past 10 years and on through 1944, 1945, and 1946, because of the following facts: (1) the' indebtedness of the estate was not settled until payment of a mortgage in 1944 on certain real estate; (2) the nature of certain assets of the estate extended the administration of the estate on beyond the taxable years; and (3) the distribution of assets was prudently delayed due to the physical, mental and financial condition of one of the legatees, George Herder, Jr.

1. We shall consider petitioners' first contention. At the time of George Herder, Sr.'s death he held a note of one Wright, the indebtedness being secured by a second mortgage on Wright's land. As the note was community property of George Herder, Sr., and his wife, only one-half the value of the note, including accrued interest, was reported in his estate appraisal. In 1937, Wright sold the land to the holders of the second mortgage, the first mortgage being assumed by the purchasers. After Mary Herder's death in 1942, each estate owned a one-half interest in the land and each owed one-half of the note due to the Federal Land Bank which was secured by the first mortgage on the land. In 1944, the estate of Mary Herder paid off the note in full and was entitled to reimbursement from the George Herder, Sr., estate for one-half the payment.

We considered a similar question in the recent *Stewart* case, *supra*, where the estate held land which was covered by a mortgage. We held that such an obligation of the estate was not sufficient cause for a continuation of the period of administration since the property was readily distributable, with the transferee receiving the land subject to the mortgage.

In addition, we note that the Herder estates possessed at all times adequate cash to pay off the first mortgage note on the Wright land. It is our opinion that the payment of the note preliminary to distribution of the land did not constitute one of the administrative duties of independent executors of an estate. The independent executors obviously had the same opinion as they failed to pay off the obligation before making distribution of cash prior to 1944 to the residuary legatees, there being adequate funds for payment of the obligation. Hence, we are of the opinion that this first ground relied upon by petitioners is insufficient reason to prolong the administration of the estate of George Herder, Sr.

2. Petitioners rely upon a second ground as a reason for prolonged administration of the estates, namely, that the estates each held an eight twenty-fifths interest in land and notes secured by mortgages on land. These assets were at one time the property of Central State Bank, Eagle Lake, Texas, which was liquidated. The assets were

transferred by the bank in 1935, and thereafter the assets were held in common by the former owners of common stock of the bank. The combined holdings of the estates constituted sixteen twenty-fifths of the entire interest in the assets. We do not understand the necessity for these assets to be converted to cash before being distributed to the legatees. Just as the bank transferred the assets to its stockholders to be held in common, we see no reason why the independent executors could not have conveyed the assets in common to the legatees in their proportionate shares.

The George Herder, Sr., estate also held undivided interests in two tracts of real estate. Under certain circumstances the nature of the assets held by an estate may warrant that the period of administration be prolonged, see *Frederich* v. *Commissioner*, *supra*, and *William C. Chick*, *supra*, but upon the facts developed in these proceedings, we hold the nature of the assets held by the George Herder, Sr., estate fail to support the contentions of the petitioners.

3. Petitioners contend, in the third place, that the period of administration was prolonged for the purpose of rendering a service to a legatee. In view of the physical, mental and financial condition of George Herder, Jr., the independent executors agreed that it would be to the beneficiaries' best interests to keep the estate intact. Perhaps, a continuation of the estates would keep the interest of George Herder, Jr., in a better state than if distributed to him; however, we need not pass on that question. But the petitioners thereby admit that the period of administration was continued for the benefit of a legatee, and not for the purpose of settlement of the estate. The administration of an estate is concerned primarily with the collection of assets and payment of claims, and not with the more or less permanent custody of property for the protection of a legatee. If a decedent desires to keep intact a portion of his estate, he must himself do so through appropriate means, such as a testamentary trust. There was no indication in the will of George Herder, Sr., that he wanted to keep his estate intact after his death. The contrary was indicated. Under certain circumstances, such as temporary illness of a legatee, the distribution of the estate property may perhaps be prudently postponed, but only as a temporary measure. If George Herder, Jr., was not permanently incapacitated and was not at all times unable to manage his properties after his first stroke in 1939, then there were times when the property could have been distributed to George Herder, Jr. Where, however, the incapacity has continued for a period of years, it is meet and proper that the executors make some arrangement for distribution of the property to the legatee. Here the executors could certainly have proceeded with the distribution to the other legatees of the balance of the estate properties, but this was not done.

The third contention of petitioners fails to convince us as a meritorious reason for a continuance of the period of administration of the estates. When we consider all the facts, we think we must sustain the Commissioner's determination that the estate of George Herder, Sr., was not in process of administration during 1944, 1945, and 1946, within the meaning of the applicable statute and Treasury regulations and that the income in question was taxable to petitioners. Cf. *William C. Chick, supra.*

### Estate of Mary Herder.

Now, as to the estate of Mary Herder the situation is somewhat different. Mary Herder died December 2, 1942. In 1944, a deficiency in Federal estate tax was paid by her executors and the Texas state inheritance tax was not paid until March 1944. In view of these facts, petitioners argue in their brief that:

* * * The estate could not have been distributed until the payment of these debts because the residue could not be determined. The executors would at least have a reasonable time after the payment of these debts to distribute the residue of the estate. This would be true even if there were no other extenuating circumstances which made it necessary for the period of administration to be prolonged. Therefore, it would appear to be reasonable that the executors would have until at least 1945 to wind up the affairs of the Estate of Mary Herder under normal conditions. * * *

In this argument, we agree with petitioners. Our holding in this respect, we think, is in line with what we said in the case of *William C. Chick, supra,* where we stated:

* * * We, of course, do not mean to say that the petitioner, as executor of the estate, should have immediately filed his final account as executor in 1937. Naturally, executors are allowed a reasonable time within which to do these things. The Commissioner does not contend otherwise. It was not until 1940, three years after the final claim against the estate had been settled, that the Commissioner determined that there was no further necessity for administration of the estate, that the estate was no longer in process of administration, that the testamentary trust should be considered as having come into being, and that under section 162 (b) the trust income was taxable to petitioners, as the beneficiaries of the trust. * * *

For reasons above stated, we hold that the estate of Mary Herder was in process of administration during the taxable years 1944 and 1945, and that the income of the estate was taxable to the estate, and not to petitioners. For the year 1946, we hold the estate was not in process of administration within the meaning of the applicable statute and Treasury regulations and that the income of the estate in that year is taxable to petitioners.

The remaining issue presented for our determination concerns the 25 per cent delinquency penalty imposed by the Commissioner against Florence Herder and the deceased George H. Herder, Jr., on their 1944

and 1945 income tax returns. They seek to avoid the addition to tax provided by section 291 of the Code on the grounds that such failure was due to reasonable cause and not due to willful neglect. Relatives of the deceased George Herder, Jr., testified that he suffered his first stroke in 1939, and suffered several other strokes before his death in 1947. The testimony failed to establish that the impairment of decedent's mental and physical condition was continuous; perhaps, he was incapacitated only at certain intervals recurring with each stroke. The facts are not clear. It was not established that George Herder, Jr., was incapacitated and unable to prepare his returns on the dates they were due. Petitioners failed to explain why the decedent was able to have the returns prepared and filed in December 1946, and yet he was unable to file his tax returns on the due dates.

Petitioners have based their claim that reasonable cause existed only on the state of health of George Herder, Jr. Texas is a community property state where the husband and wife may each report one-half the community income on their separate returns. The tax returns of the two petitioners for the years 1944 and 1945 reported the same amount of net income. The preparation of one return was, more or less, a preparation of the other. Florence Herder was familiar with the financial condition and business affairs of her husband. They do not offer any reason for Florence Herder's failure to file her return within the prescribed time. Where a return is not filed until after the due date, and where the taxpayer alleged incapacity to file a return, the burden of proof is upon the taxpayer, section 291, I. R. C. We think that petitioners have failed to establish reasonable cause and for the years 1944 and 1945, they are liable for 25 per cent delinquency penalty.

*Decisions will be entered under Rule 50.*