Lilly Harris v. Commissioner.
Harris v. Commissioner
Docket No. 1802-66.
United States Tax Court
T.C. Memo 1969-49; 1969 Tax Ct. Memo LEXIS 248; 28 T.C.M. (CCH) 272; T.C.M. (RIA) 69049; March 13, 1969, Filed *248 1. Held, petitioner has failed to prove that some of the unexplained bank deposits, not already eliminated by the two written stipulations, should be further eliminated from petitioner's taxable income. 2. During the taxable years 1960, 1961 and 1962, petitioner owned and operated three rental properties in the City of New York. Held, petitioner has proven that she is entitled to deduct certain rental expenses in addition to the expenses allowed by respondent. 3 and 4. Respondent, by an amended answer, affirmatively alleged petitioner was subject to additions to tax under section 6653(a), I.R.C. 1954, for negligence and under section 6651(a), I.R.C. 1954, for failure to file returns on the date prescribed. Held, respondent has failed to prove that such additions to tax should be made. 5. Held, petitioner is not entitled to deduct depreciation on the Surf Avenue property since that was not business property. 6. Held, the burden of proof as to Issue 1, unexplained bank deposits, was upon petitioner and not upon respondent. Fred R. Tansill, 1521 New Hampshire Ave., N.W., Washington, D.C., for the petitioner. James Gallagher, for the respondent. STERRETT
Memorandum Findings of Fact *249 and Opinion STERRETT, Judge. [1] Respondent, in a statutory notice dated January 11, 1966, determined deficiencies in income tax and additions to the tax under sections 6653(b) and 6654, I.R.C. 1954, for the calendar years 1960, 1961 and 1962, in amounts as follows: *11
Additions to the Tax
Year
Deficiency
6653(b)
6654
1960
$26,036.33
$13,018.17
$729.02
1961
36,063.86
18,031.93
1,009.79
1962
32,196.51
16,098.26
901.50
In paragraph 3 of the petition, filed April 11, 1966, petitioner alleged that "The deficiencies and penalties as determined by the Commissioner" were as stated in the deficiency notice dated January 11, 1966, which are set forth above and total $144,085.37. On April 24, 1968 the parties *250 filed a stipulation of facts, and respondent, with leave of the Court, filed an amended answer, paragraph 3 of which reads as follows. [2]
3. Denies the allegations of paragraph 3 of the petition. Alleges that the deficiencies in income tax and penalties which are in issue are as follows: §6651(a)
§6653(a)
§6654
Year
Deficiency
Penalty
Penalty
Penalty
1960
$11,707.01
$2,926.75
$ 585.35
$327.80
1961
22,266.46
5,566.62
1,113.32
623.46
1962
14,715.79
3,678.95
735.79
412.04
In paragraph 4 of the petition, petitioner assigned 15 errors, (a) through (o) inclusive, all of which were denied in respondent's answer and amended answer. However, petitioner, in her opening brief filed August 21, 1968, lists 6 issues to be decided as follows: (1) Whether Commissioner erred by attributing *251 other income to petitioner in each of the taxable years based upon "unexplained bank deposits?" (2) Whether Commissioner allowed, in all taxable years, all of the permissible costs and expenses incurred by petitioner relating to the operating of her rental properties? (3) Whether Commissioner erred by determining a negligence penalty under Section 6653(a) for failure to pay tax in each year? (4) Whether Commissioner erred by determining a 25% penalty under Section 6651(a) for failure to file tax returns in each year? (5) Whether petitioner is entitled to depreciation on the Surf Avenue property in each of the taxable years? (6) What, if any, presumptions of correctness should still attach to the original statutory determinations? Petitioner attached a footnote to these six issues to be decided which is as follows: The original catalogue of issues was much wider than those tabulated below. The remaining issues for decision are simply those not already eliminated by appropriate Stipulation of Facts or which are not conceded; issues not raised here or discussed below may be regarded as conceded. Findings of Fact Some of the facts were stipulated. The stipulation of facts filed April 24, *252 1968, together with all of the exhibits attached thereto, and the first supplemental stipulation of facts filed May 16, 1968, together with all of the exhibits attached thereto, are incorporated herein by reference. Petitioner was born in Austria-Poland in 1905. Although married many years ago, petitioner has been separated from her husband since 1958. At the time of the filing of the petition herein, petitioner resided in New York City, New York. Petitioner filed no returns for the years here in question until more than 9 months after the petition herein was filed. The returns for 1960, 1961 and 1962 were due to be filed on April 15, 1961, 1962 and 1963, respectively. On January 20, 1967, petitioner, at the request of her attorney, filed returns for 1960, 1961 and 1962 with the district director of internal revenue, Brooklyn, New York. During the years 1960, 1961 and 1962, petitioner was engaged in a controversy with the Internal Revenue Service involving income taxes for the years 1949 through 1953. Petitions were filed with this Court and on January 30, 1964 we filed a report holding for the Commissioner. See T.C. Memo. 1964-21. On appeal to the U.S. Court of Appeals, Second Circuit, *253 the Tax Court was affirmed. See Harris v. Commissioner, certiorari denied 382 U.S. 931, 86 S. Ct. 323, (1965). In the statement attached to the notice of deficiency herein, the respondent made adjustments to taxable income for the three years here involved, as follows: 1960
1961
1962
Adjusted gross income disclosed in the re- turn (none filed)
-0-
-0-
-0-
Additional income:
Interest
$ 1,293.07
$ 1,574.32
$ 1,737.62
Dividends
-0-
* 195.72
* 1,910.06
Capital gain
-0-
1,151.83
909.59
Other income
48,718.50
60,423.89
54,116.45
Total
50,011.57
63,345.76
58,673.73
Deductions and exemptions:
Standard deduction
$ 500.00
$ 500.00
$ 500.00
Personal exemption 600.00
600.00
600.00
Total
1,100.00
1,100.00
1,100.00
Taxable income as adjusted
$48,911.57
$62,245.76
$57,573.73
"Other income" was explained in the said statement, as follows: Based on an analysis of bank deposits, it has been determined that other income, in the amount shown, was unreported. See exhibit A. Exhibit A was an analysis in schedule form of numerous bank accounts belonging to petitioner, showing net deposits, after elimination of transfers, of $48,718.50 for 1960, $60,423.89 for 1961, and $54,116.46 for 1962. During the taxable *254 years, petitioner owned the following properties: (a) 129 Rivington Street, New York, New York
(b) 94-11 37th Avenue, Jackson Heights, New York (c) 30-05 35th Street, Astoria, New York (d) 1925 Surf Avenue, Coney Island, Brooklyn 24, New York. During the taxable years, the property at 1925 Surf Avenue was not rented and produced no income. Petitioner was actually living in the Surf Avenue property at various times between 1960 and 1962. On January 20, 1967, petitioner filed the previously mentioned delinquent returns for the three years, and reported thereon the following items: 275 1960
1961
1962
Interest income (same as respondent)
$ 1,293.07
$ 1,574.32
$ 1,737.62
Rental income or (loss) from three properties:
(a) Rivington Street
10,759.79
9,101.72
13,903.21
Less expenses itemized 11,185.32
13,263.02
13,348.06
Net profit or (loss)
(425.53)
(4,161.30)
555.15
(b) Jackson Heights
15,813.60
16,369.00
12,636.00
Less expenses itemized 15,238.22
12,852.10
10,749.42
Net profit or (loss)
575.38
3,516.90
1,886.58
(c) Astoria
3,162.53
3,060.04
4,375.69
Less expenses itemized 3,333.24
2,900.05
3,278.17
Net profit or (loss)
(170.71)
159.99
* *255 1,197.52
Deductions, etc:
Depreciation on Surf Avenue property
900.00
900.00
900.00
Interest expense
345.30
-0-
312.45
Contributions
-0-
-0-
50.00
Taxes (itemized)
-0-
-0-
533.80
Personal exemption
600.00
600.00
600.00
Amount subject to tax
-0-
-0-
$2,980.62 276 The said returns were prepared by Samuel Brockman, an accountant employed by petitioner on the advice of her attorney. The expenses of the three rental properties taken into account by Brockman consisted only of those that could be supported by cancelled checks or receipts and did not include all of the expenses petitioner had recorded in certain books kept by herself in her own handwriting. The expenses deducted on the returns were as follows: Property
1960
1961
1962
Rivington Street:
Depreciation
$ 1,691.68
$ 1,940.32
$ 1,940.32
Oil
611.58
5,073.69
4,019.90
Insurance
47.00
465.50
827.61
Taxes
3,407.00
3,096.45
2,275.17
Legal
814.00
387.50
557.00
Painting and repairs
2,130.14
1,060.33
2,269.84
Mortgage interest
1,276.25
701.02
626.89
Miscellaneous expense 1,207.67
538.21
831.33
Total
$11,185.32
$13,263.02
$13,348.06
Jackson Heights:
Depreciation
$ 3,267.10
$ 3,267.10
$ 3,267.10
Oil
- 0 -
- 0 -
- 0 -
Insurance
491.66
199.51
- 0 -
Taxes
5,441.52
5,333.70
5,112.00
Legal
63.75
- 0 -
100.00
Painting and repairs
2,864.50
2,583.10
803.00
Mortgage interest
2,358.69
1,456.69
1,330.32
Miscellaneous expense 751.00
12.00
137.00
Total
$15,238.22
$12,852.10
$10,749.42
Astoria:
Depreciation
$ 857.98
$ 857.98
$ 857.98
Oil
355.01
- 0 -
459.48
Insurance
- 0 -
- 0 -
- 0 -
Taxes
695.70
1,347.70
1,396.05
Legal
- 0 -
- 0 -
- 0 -
Painting and repairs
799.00
142.21
135.35
Mortgage interest
535.63
460.62
386.98
Miscellaneous expense 89.92
91.54
42.33
Total
$3,333.24
$2,900.05
$3,278.17
*256 After these returns were filed, they were audited by a revenue agent. The agent found the rental receipts from the three rental properties to be correctly reported. He disallowed three expense items claimed on the returns, namely, on the Rivington Street property he disallowed $405.45 of the amount claimed for mortgage interest for 1960, and $2,150 of the amount claimed for oil in 1961; and on the Jackson Heights property he disallowed $800 of the amount claimed for painting and repairs in 1962. The agent, however, allowed additional deductions on the Rivington Street property of $1,618.71, $90, and $90 for depreciation for 1960, 1961 and 1962, respectively; and on the Astoria property of $300 for oil for 1962. This audit thus revised the expenses of the three rental properties from the amounts claimed in the returns to amounts as follows: Property
1960
1961
1962
Rivington Street
$12,398.58
$11,203.02
$13,438.06
Jackson Heights
15,238.22 *
12,852.10 *
9,949.42
Astoria
3,333.24 *
2,900.05 *
3,578.17
On the said delinquent returns petitioner had claimed depreciation of $900 for each of the taxable years on the 1925 Surf Avenue property, which the revenue agent disallowed. Subsequent to the *257 issuance of the statutory notice, namely, about August 1967, petitioner turned over 27 bank passbooks to respondent. The respondent in analyzing these passbooks, discovered additional 277 unexplained bank deposits and interest not shown in the notice of deficiency in total amounts, which amounts were reflected in an amended answer filed February 28, 1968, as follows: 1960
1961
1962
Additional interest
$ 499.54
$ 474.03
$ 441.84
Additional unexplained bank deposits
2,898.97
3,399.69
-0-
Also in the amended answer the respondent reduced the amount of "Other income" attributed to petitioner in the following manner: 1960
1961
1962
Total rental receipts reported
$29,735.92
$28,530.76
$30,914.90
Less:
Expenses paid in cash from rent receipts:
Rivington Street
1,557.00
- 0 -
200.00
Jackson Heights
5,634.04
2,782.61
100.00
Astoria
427.10
0
100.00
Estimated living expenses 2,000.00
2,000.00
2,000.00
9,618.14
4,782.61
2,400.00
Rental receipts assumed to be deposited
$20,117.78
$23,748.15
$28,514.90
Paragraph 7(i) (2) of the said amendment to answer alleged that as a result of the analysis of the 27 bank passbooks, the filing of the delinquent returns, and the auditing thereof by the revenue agent the following is an updated computation *258 of petitioner's unreported income: 1960
Amount 1961
1962
Interest Income
$ 1,792.61
$ 2,048.35
$ 2,179.46
Dividend Income
- 0 -
245.72
1,960.06
Capital Gains Income
- 0 -
1,151.83
909.59
Unexplained bank deposits 51,617.47
63,823.58
54,116.46
$53,410.08
$67,269.48
$59,165.57
Less: Rental Receipts Deposited 20,117.78
23,748.15
28,514.90
$33,292.30
$43,521.33
$30,650.67
Plus: Net Adjustments to Delinquent Returns (1,234.12)
1,575.59
4,049.25
Adjusted, Total Unreported Income $32,058.18
$45,096.92
$34,699.92 In paragraph 6 of the original stipulation the parties have stipulated that the unexplained bank deposits for 1962 set out in the notice of deficiency of $54,116.46 should be $54,146.46, an increase of $30. In paragraph 12 of the original stipulation the parties have stipulated that dividend income for 1962 was $1,930.06 instead of $1,960.06, a decrease of $30. In the first supplemental stipulation of facts filed subsequent to the hearing herein the parties have stipulated that due to certain explanations at or just prior to the trial the unexplained bank deposits should be further reduced by $13,407.82 for 1960, $178.96 for 1961 and $8,720.59 for 1962. During the taxable years petitioner was in poor physical health. *259 She had a stroke in 1960 and became paralyzed. She also had a heart attack, bladder trouble, breast cancer and other ailments. She was constantly in and out of hospitals. She lived alone. These ailments severely restricted her activities during 1960 and following years. During the taxable years petitioner had difficulties other than her poor health. She was engaged in frequent disputes with the administration of the City of New York over the ownership and operation of her three pieces of rental property. As the owner of these properties she was repeatedly charged with violations of various renting, housing, sanitary and health laws and regulations. She was on a number of occasions involved in court appearances and court room trials in the courts of New York, and actually served a prison term of about two months. 278 It was also during these years that she was engaged in the previously mentioned controversy with the Internal Revenue Service concerning her income taxes for the years 1949 through 1953. In September 1963, the examining revenue agent, while auditing the years 1960, 1961 and 1962, contacted petitioner by telephone to inquire about her failure to file income tax returns *260 for those years. Petitioner admitted she had not filed the returns explaining that she had been involved in some prior years tax matters and had not yet turned these years over to her accountant, but that she intended to do so. Petitioner maintained the records with respect to the rental properties herself in her own handwriting in a series of small note books. She actually made the rent collections herself when able to do so; when she was ill someone would occasionally help her. Some of the evidence confirming the expenses of renting and operating the rental properties had been lost but we find that the actual total expenses exceeded the amounts shown on the delinquent returns. Petitioner paid many creditors in cash herself which items were not reflected in the tax returns filed for the taxable years. Typical would be cash given to a superintendent to buy light bulbs, barrels and other things needed for maintenance. They were not paid for by checks but by cash. Petitioner personally kept a record of these cash disbursements in the note books maintained by her. Based on an analysis of the figures kept by petitioner in her notebooks, we find that additional cash expenses, not reflected *261 on the tax returns and attributable to the operation of the rental properties, were paid as follows: 279 Rental Property
1960
1961
1962
Rivington Street
$1,754.03
$2,707.39
$2,655.38
Jackson Heights
310.90
2,138.61
9,323.70
Astoria 3,821.16
3,525.72
2,834.26
Totals
$5,886.09
$8,371.72
$14,813.34
The above additional cash expenses are itemized as follows: Rental Property
1960
1961
1962
Rivington Street:
Building superintendent
$ 293.50
$ 291.75
- 0 -
Oil and furnace repairs
225.10
0
$ 169.95
Fire and liability insurance
628.93
413.86
- 0 -
Plumbing supplies and repairs
- 0 -
1,522.28
854.43
Painst and plastering
- 0 -
64.00
- 0 -
Repairs, exterminator
- 0 -
28.00
- 0 -
Electrical work
- 0 -
315.00
- 0 -
Legal costs 606.50
72.50
1,631.00
Totals
$1,754.03
$2,707.39
$2,655.38
Jackson Heights:
Fire and liability insur- ance
$ 310.90
$1,318.86
$5,629.7
Repairs and exterminator
- 0 -
345.75
1,333.75
Paints and plastering
- 0 -
160.00
192.00
Plumbing supplies and repairs
- 0 -
9.00
58.50
Electrical repairs and supplies
- 0 -
15.00
73.00
Legal expenses
- 0 -
- 0 -
45.00
Supplies and misce llaneiou
- 0 -
190.00
1,991.72
Stationery and stamps - 0 -
100.00
- 0 -
Totals
$ 310.90
$2,138.61
$9,323.70
Astoria:
Building super intendent
$ 180.00
$ 180.00
0
Oil & furnace repairs
996.73
1,306.99
$ 662.34
Fire & liability insurance
255.22
255.22
328.70
Water tax
78.00
- 0 -
86.15
Plumbing supplies & repairs
462.50
207.00
532.00
Paint and plaster
455.00
228.00
335.00
Repairs to sidewalk, etc.
1,022.30
867.60
737.07
Stationery and stamps
100.00
125.00
25.00
Supplies & miscellaneous 271.41
355.91
128.00
Totals
$3,821.16
$3,525.72
$2,834.26
In *262 an effort to find higher interest rates petitioner would move funds from one bank account to another. Prior to the determination of the deficiencies herein the respondent recognized that the total of such transfers between accounts for the three taxable years amounted to $97,736.64, which amount was not included in income in the respondent's determination. In the first supplemental stipulation of facts, filed after the hearing, the parties stipulated in paragraph 8 that the total of such transfers between accounts for the three taxable years amounted to $120,044.01 instead of $97,736.64, an increase of $22,307.37, which increase the respondent now concedes should be eliminated from the unexplained bank deposits. Ultimate Findings of Fact Sizeable amounts, namely, $5,886.09 for 1960, $8,371.72 for 1961 and $14,813.34 for 1962, of previously unallowed costs and expenses of petitioner incurred and paid in operating her rental property business have not heretofore been allowed in any of the taxable years. Petitioner realized taxable income from unexplained bank deposits of $18,091.87 in 1960, $39,896.47 in 1961, and $16,910.97 in 1962. Petitioner realized taxable income in the form of *263 interest of $1,792.61 in 1960, $2,048.35 in 1961, and $2,179.46 in 1962. Petitioner realized taxable income from short-term capital gains in 1961 of $1,151.83 and from long-term capital gains in 1962 of $1,819.18. Petitioner realized taxable income in the form of dividends of $245.72 in 1961 and $1,930.06 in 1962. Petitioner failed to file timely Federal income tax returns for the taxable years 1960, 1961, and 1962, but respondent has failed to carry its burden of proof that such failure was due to wilful neglect. Respondent has failed to carry its burden of proof that any part of the underpayment of tax for any year at issue was due to negligence on the part of petitioner. Opinion The issues have been previously stated. We will first discuss and decide issues 6 and 1, and then the other four issues seriatim. Issues 6 and 1. Under Issue 6 the petitioner contends that where the respondent abandons a great part of his determination in the original statutory notice of deficiency, its prima facie presumption of correctness is lost and the respondent has the burden of proof which he has not met and carried. Petitioner cites no authority for such a contention, but bases it primarily on *264 the manner in which the unexplained bank deposits referred to in the deficiency notice as "Other income" was handled. This manner may be summarized as follows: 281 Explanations
1960
1961
1962
Total
Determined in deficiency notice
$48,718.50
$60,423.89
$54,116.46
$163,258.85
Additional unexplained bank deposits discovered after delivery of 27 passbooks 2,898.97
3,399.69
30.00
6,328.66
Unexplained revised
51,617.47
63,823.58
54,146.46
160,587.51
Less rental receipts after filing of delinquent returns 20,117.78
23,748.15
28,514.90
72,380.83
Unexplained revised
31,499.69
40,075.43
25,631.56
97,206.68
Less additional explanations in 1st supplemental stipu- lation of facts 13,407.82
178.96
8,720.59
22,307.37
Bank deposits remaining unexplained $18,091.87
$39,896.47
$16,910.97
$74,899.31 Petitioner in her brief states the amount of the remaining unexplained bank deposits at $73,395.49 instead of $74,899.31, a discrepancy of $1,503.82. Since her contention that the burden of proof has shifted is rather novel, we quote from her brief as follows: Initially, the Statutory Notice taxed to the petitioner as a major source of income "other income" consisting essentially of "unexplained bank deposits." In total amount $265,820.33 *265 was involved in such deposits. Stipulations later filed in this case together with the Amended Answer and a First Amendment to Answer reflected the voluntary abandonment by the Respondent of this argument of $192,429.84 [Sic. Assumed petitioner meant $192,424.84 ($120,044.01 plus $72,380.83)]. At this late stage of the case only a comparatively minor portion - $73,395.49 - of the initial amount is still in controversy. The balance has all been deleted from this category having been identified as a kind of deposit which does not constitute income or as mere transfers of funds. It seems eminently unfair to hold at the end of this case that the residuum of the respondent's shot-gun approach still has attached to it any taint of correctness. It is respectfully urged that this Court hold and find that the original determination has long since ceased to have any presumption of correctness and the burden with respect to such a matter is now on the respondent. The record being what it is, the Respondent has failed to carry that burden and the residue of the "unexplained bank deposits," should not be taxed as income to the Petitioner. We do not agree. In the first place, the respondent in his *266 deficiency notice included as "other income" only $163,258.85 as "unexplained bank deposits" and not $265,820.33. The facts show that prior to the determination, the respondent had excluded $97,736.64 from the deposits made during the three taxable years, and that in the first supplemental stipulation the parties agreed that the correct transfers between accounts should have been $120,044.01, an increase of $22,307.37. [3]
*267 We do not agree that the burden of proof is now on the respondent to show that the remaining amount of unexplained bank deposits, $74,899.31 should be included in petitioner's income. Petitioner is correct in saying that "It is axiomatic that the Commissioner's Statutory Determination is presumed to be correct. See Burnet v. Houston, 283 U.S. 223 (1931). All that the respondent has done is to concede that of the total amount of "Other income" of $163,258.85, a certain net amount of $88,359.54 ($72,380.83 plus $22,307.37 minus $6,328.66) should now be excluded from income. Such concessions on the part of the respondent do not, in our opinion, shift the burden of proof. The burden remained on petitioner to explain the remaining amount of $74,899.31. Petitioner has requested findings that some of the unexplained bank deposits, not eliminated by the two stipulations, were wedding gifts, inheritances, other gifts, earnings from a drug store she and her former husband had operated, monies held in trust for her children and for other purposes, borrowed funds, tenants' security payments, given to her as landlord at the beginning of a lease by the tenants, and some deposits of checks which *268 were later returned for lack of funds in the drawer's account. Suffice it to say that petitioner has completely failed in her proof as to such requested findings. While some of the deposits were in the name of someone other than petitioner, petitioner nevertheless, testified that the money so deposited was her money. We hold that the remaining total amount of $74,899.31 for the three years should be included in petitioner's income. Issue 2. The second issue is entirely one of fact. We are satisfied from the evidence submitted by petitioner that petitioner had expenses attributable to the operation of her rental properties in addition to the expenses deducted on her returns and allowed by the respondent. In her brief petitioner claims she is entitled to additional amounts of 283 $33,184.59 for 1960, $25,501.34 for 1961 and $30,572.21 for 1962. We have found that petitioner is entitled to additional amounts of $5,886.09 for 1960, $8,371.72 for 1961 and $14,813.34 for 1962. These amounts are itemized in our findings and need not be repeated here. True, the additional amounts we have found amount to a little less than one-third of the additional amounts claimed. However, it was difficult *269 to determine from petitioner's evidence, namely, the note books kept by petitioner in her own handwriting, what expenses had been deducted on the returns and allowed by the respondent and what expenses had not been so deducted and allowed. The burden was upon petitioner to show this and she was unable to carry her burden, except for the additional amounts we have found. Accordingly, our findings of the additional amounts represent as close an approximation as we can make of petitioner's rental expenses, bearing heavily upon the petitioner inasmuch as the inexactitude of the record is of her own making. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930); Angelus Funeral Home, 47 T.C. 391, 399 (1967), affirmed 407 F. 2d210 (C.A. 9, 1969). It is noted that there were included in the additional amounts claimed by petitioner expenses of the 1925 Surf Avenue property of $2,121.56 for 1961 and $1,119.87 for 1962. This is not a business property and petitioner is not entitled to deduct any expenses in connection with the Surf Avenue property. Section 262, I.R.C. 1954. Issue 3. Section 6653(a) I.R.C. 1954, provides in part: If any part of any underpayment * * * is due to negligence or intentional *270 disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. Originally, the respondent determined an addition to tax for fraud under section 6653 (b) I.R.C. 1954. In an amended answer filed April 24, 1968, respondent abandoned his determination of fraud and affirmatively alleged that petitioner was subject to an addition to tax under section 6653(a), supra. Inasmuch as such an allegation constitutes new matter raised for the first time by the respondent in an amended answer, the burden of proving negligence is upon respondent. Rule 32, Rules of Practice of the Tax Court. We have found that petitioner engaged a public accountant to prepare and file the returns here in question. It is true the accountant did not report all of petitioner's income. An example is interest. He reported all the interest determined by the respondent in the deficiency notice but failed to report additional interest, later discovered, of $499.54 in 1960, $474.03 in 1961 and $441.84 in 1962. He reported no income from unexplained bank deposits. Of course, petitioner claims there was no income from this source. As we have *271 seen from Issue 2, supra, the accountant failed to deduct rental expenses for the three years in the total amount of $29,071.15. In Conlorez Corporation, 51 T.C. 467 (1968), where the burden of proof was upon the taxpayer, we held the taxpayer had sustained its burden of proving no negligence or intentional disregard of rules and regulations. In that case, we said: The petitioner's 1961 and 1964 income tax returns were prepared by its accountant and fully disclosed receipt of sums in respect of the involuntary conversion of the Realty. The accountant was experienced in tax matters, and the evidence indicates that the petitioner relied in good faith on his advice. In these circumstances, we find that the underpayment of income tax was not due to the petitioner's negligence or intentional disregard of rules and regulations. Brockman Building Corporation, 21 T.C. 175, 191 (1953), affirmed, 231 F. 2d 145 (C.A. 9, 1955) cert. denied 350 U.S. 936 (1956)., R.E. Nelson, 19 T.C. 575, 581 (1952)., Davis Regulator Co., 36 B.T.A. 437, 444 (1937). In the instant case the burden is upon the respondent to prove negligence or intentional disregard. We hold he has not met his burden. Issue 4. Section 6651(a), I.R.C. 1954, *272 provides in part: In case of failure to file any return required * * * on the date prescribed there-for * * * unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax * * * not exceeding 25 percent in the aggregate. [Emphasis supplied.] Like the preceding issue the respondent affirmatively alleged that petitioner was subject to an addition to tax under section 6651 (a), supra, and, like the preceding issue, the burden of proof is upon the respondent. Rule 32, supra., Bruner Woolen Co., Inc., 6 B.T.A. 881 (1927). Here again we do not think the respondent has met his burden. He has shown that petitioner was late in filing her returns but this is not enough. On the other hand, petitioner has shown that during the years the 284 returns here in question were due to be filed petitioner was in the process of litigating her prior tax liabilities for the years 1949 through 1953. Our final decision for those years was not entered until sometime after January 30, 1964. During that same period petitioner was engaged in almost continuous controversy with the New York State and Municipal authorities *273 over alleged violations of health, sanitation, housing and other regulations growing out of the use and rental of her commercial properties. She actually served a prison term of about two months. In addition, petitioner's home life was in chaos marked by legal separation from her husband. During the years for which these returns were due to be filed petitioner's activities were severely restricted by reason of ill health. She had a stroke in 1960 and became paralyzed. she had a heart attack, bladder trouble, breast cancer and other ailments. She was constantly in and out of hospitals. In September 1963, a revenue agent contacted petitioner by telephone to inquire about her failure to file returns for the years 1960, 1961, and 1962. Petitioner admitted she had not yet filed the returns explaining that she had been involved in some prior years' tax matters and had not yet turned these years over to her accountant, but that she intended to do so, and in fact she did later turn her books over to her accountant who prepared and filed returns for the taxable years here involved. If the burden of proof had been upon petitioner to show that her failure to file on time was "due to reasonable *274 cause and not due to willful neglect" her explanations for failure to file on time might well not be sufficient to relieve her of the 25 percent addition to tax, Cf. Alma Williams, 16 T.C. 893, 906 (1951), but since the burden is upon the respondent and since we believe the respondent has failed in his burden, we hold that no addition to tax under section 6651(a), supra, should be added. Bruner Woolen Co., Inc., supra.
Issue 5. Petitioner contends she is entitled to a depreciation deduction in the amount of $900 for each of the taxable years on the 1925 Surf Avenue property. These amounts were claimed on the returns filed by petitioner but they were disallowed by the respondent for the reason that "Depreciation on building which was never put into productive use is not allowed." Petitioner has failed to prove that the Surf Avenue property was business property and we hold that petitioner is not entitled to deductions for depreciation thereon. Decision will be entered under Rule 50. Footnotes
1. This case was tried by Judge C. Rogers Arundell (Recalled), and briefs have been duly filed. Judge Arundell died on May 28, 1968. This case, not having been disposed of, notice of reassignment was given to the parties on June 5, 1968, suggesting that either party could file a motion for rehearing or reargument on or before July 8, 1968. Neither party responded to this notice of reassignment. An order reassigning the case to Judge Samuel B. Sterrett↩ for disposition thereof was entered on October 22, 1968.
2. Paragraph 11 of the amended answer alleges in part: (b) Respondent, in this amended answer, has conceded the fraud penalty under § 6653(b) and lieu thereof asserted additions to the tax under § 6651(a) and 6653(a) for each of the taxable years 1960, 1961 and 1962, claim for both of which is hereby made pursuant to the provisions of § 6214(a)) of the Internal Revenue Code of 1954. The deficiencies and penalties thus alleged total $64,659.34.↩
*. Net after statutory exclusion of $50↩
*. error of subtraction of $100 in return
*. No change↩
3. Apparently, the discrepancy of $1,503.82 is in the arrival by petitioner of the total amount of "unexplained bank deposits" as being $265,820.33 instead of what petitioner apparently intended of $267,324.15, which would have been arrived at as follows: Deficiency notice
$163,258.85
Excluded by respondent prior to de- ficiency notice
97,736.64
Additional after delivery of 27 pass- books 6,328.66
Total amount apparently intended
267,324.15
Total amount used by petitioner in brief 265,820.33
Discrepancy
$ 1,503.82
If the amount of $267,324.15 is used, the remaining unexplained bank deposits would be the amount of $74,899.31, determined as follows:
↩
Total amount apparently intended
$267,324.15
Less: Rental receipts
$ 72,380.83
Transfers between accounts 120,044.01
192,424.84
Bank deposits remaining unexplained
$ 74,899.31