ESTATE OF LANA CHANEY LONG, DECEASED, JOHN A. LONG, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Long v. Commissioner
Docket No. 1174-74.
United States Tax Court
T.C. Memo 1978-172; 1978 Tax Ct. Memo LEXIS 345; 37 T.C.M. (CCH) 734; T.C.M. (RIA) 780172; May 9, 1978, Filed *345 Lana Chaney Long filed no Federal income tax returns for 1965 through 1968. After her death in 1968 her son was appointed her executor. Over two years after his appointment as executor, Lana Chaney Long's income tax returns were filed. Held, the delay in filing Lana Chaney Long's Federal income tax returns was not due to reasonable cause. Respondent therefore properly imposed the penalty provided by sec. 6651(a), I.R.C. 1954. John A. Long, pro se. Susan B. Watson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioner's income taxes: Sec. 6651(a) [1] Year
Tax
Addition to Tax
1965
$ 5,209.31
$1,368.66
1966
12,348.95
5,674.84
1967
782.08
699.66
1968
268.60
2,085.35
$18,608.94
$9,828.51
*346 Some of the issues have been settled. The only issue remaining for our consideration is whether the failure to timely file Lana Chaney Long's income tax returns for 1965 through 1968 was due to reasonable cause and not willful neglect. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Lana Chaney Long was a resident of Hagerstown, Maryland. Her income tax returns for the years in question were filed on February 18, 1971, with the District Director of Internal Revenue, Philadelphia, Pennsylvania. The petition herein was filed by her son, John A. Long, Jr., a resident of Stony Brook, New York. Lana Chaney Long (hereinafter Mrs. Long) died on November 23, 1968. On December 4, 1968, her son, John A. Long (hereinafter petitioner), was named the executor of her estate. Prior to Mrs. Long's death, she had a history of physical and mental problems. From 1958 until her death ten years later, Mrs. Long had extended periods of hospitalization at various nursing homes and psychiatric institutions. During the years before us she had the following periods of convalescence: *347 in 1965 she spent approximately nine months in Avalon Manor, a nursing home; in 1966 from March until June she was in the Seton Institute in Hagerstown, Maryland, for psychiatric problems; she spent the remainder of 1966, all of 1967 and 1968, until her death, in the Fahrney-Keedy nursing home. During her stay at the various hospitals and nursing homes, Mrs. Long had periods when she was in a lucid state. There were periods every year when she was lucid. While in these lucid states she was very cooperative, and she kept her records and received mail. During other periods, however, she was very noncommunicative and protective of her records. Because of her various problems, petitioner was twice appointed her conservator, once in 1958, and again in 1962. During other periods, including during the years before us, petitioner actively managed her business affairs. Because of his mother's illness petitioner asked for and received several extensions of time to file his mother's income tax returns. He received three extensions for filing her 1965 income tax return, extending the filing date to October 15, 1966. He received one extension for her 1966 filing deadline, extending that *348 date until July 15, 1967. And, he received one extension for her 1968 filing deadline, extending that date to July 15, 1969. Despite these extensions, no income tax returns, for the years in question, were filed until February 18, 1971. These returns were prepared by Charles J. Froehlich, Jr., C.P.A., who was hired during the summer of 1970. On November 20, 1973, respondent sent petitioner, as executor, a statutory notice of deficiency stating that since Mrs. Long's income tax returns for the years in question "were not filed within the time prescribed by law, and you have not shown that such failure to timely file [her] returns was due to reasonable cause, 25 per centum of the tax is added in accordance with the provisions of Section 6651(a) * * *." OPINION The only issue we must decide is whether failure to timely file Mrs. Long's Federal income tax returns was due to reasonable cause and not willful neglect. Section 6651(a) imposes a maximum 25 percent penalty for failing to timely file an income tax return unless such failure was due to reasonable cause and not willful neglect. The taxpayer has the burden of proving that a failure to timely file was due to reasonable *349 cause. Bebb v. Commissioner,36 T.C. 170, 173 (1961). The absence of willful neglect alone is not adequate to avoid the penalty imposed by section 6651(a). See West Virginia Steel Corp. v. Commissioner,34 T.C. 851, 860 (1960). Generally, petitioner makes two contentions why his mother's income tax returns were not timely filed. First, he contends she was not mentally competent and, hence, was unable to file the returns herself, and second, he contends she refused to allow him access to her records so he could file returns on her behalf. [2]
*350 If a taxpayer is so ill that he is incapable of filing income tax returns, the illness will constitute reasonable cause for failing to timely file. See generally Williams v. Commissioner,16 T.C. 893, 906 (1951). There is no question that for a long period Mrs. Long was not well. During periods when she was not lucid, she became highly uncooperative and noncommunicative. In this state, we have little doubt that she was incapable of filing her income tax returns. During other periods, however, Mrs. Long was lucid, helpful and cooperative and apparently able to look after her own affairs. She continued to keep her records and receive her mail. During part of each year before us, her son testified she had lucid periods. It is during those periods, we believe, Mrs. Long could have assisted in preparing her income tax returns and petitioner could have obtained necessary records. Even if Mrs. Long was not sufficiently lucid to assist in preparing her returns, we believe the failure to file these returns until over 2 years after her death was not due to reasonable cause. Petitioner was aware that income tax returns were due and he requested extensions of the due *351 date. He assisted his mother in her financial matters and he was familiar enough with her business activities to be twice appointed her conservator. Given his knowledge that returns were due, and his familiarity with his mother's finances we believe he could have adequately filed her returns prior to February 1971. Indeed, we note petitioner did not even retain an accountant to help with the returns until the middle of 1970, approximately 19 months after his mother's death. In creating this sort of delay, we do not believe petitioner exercised ordinary business care and prudence. See sec. 301.6651-1(c)(1), Proced. & Admin. Regs. We therefore conclude that even had Mrs. Long been sufficiently ill to justify failing to file her returns during her lifetime, her son's excessive delay in filing those returns was not due to reasonable cause. Accordingly, respondent properly assessed penalties under section 6651(a). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The facts are unclear whether, prior to his appointment as executor, petitioner had authority to file his mother's income tax returns. At trial, he insisted he had no authority to file his mother's income tax returns while she was incompetent, even though he was appointed her conservator in 1962. There is no documentation showing the extent of his powers under the conservatorship or the extent of its duration. We are aware, however, that during the years before us petitioner apparently had the authority to execute Form 2688, "Application For Extension Of Time To File," and he had the authority to manage his mother's business affairs.↩